## IN THE UNITED SATE DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FRANCISCO S. ARCHULETA,

        Plaintiff,

v.                                                         No. CIV 10-1224 JB/RHS

CITY OF ROSWELL, NEW MEXICO,
AL SOLIS, TRAVIS HOLLEY, JESSICA PALMER,
DAVID HERNANDEZ, RENEE L. CAMACHO,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Santiago Hernandez's Motion to

Dismiss, Defense of Failure to State a Claim, under Rule 12(b)(6), filed February 23, 2012 (Doc.

18)("Motion to Dismiss").  Plaintiff Francisco S. Archuleta is currently incarcerated at a federal

facility in Florence, Colorado, and is proceeding pro se and in forma pauperis.  The primary issues

are: (i) whether Defendant David Hernandez, Archuleta's attorney in a federal criminal case, is a

private citizen or a state actor as required for a cause of action under 42 U.S.C. § 1983; (ii) whether

there are sufficient allegations to show a conspiracy based on racial animus under 42 U.S.C. § 1985;

(iii) whether Archuleta's allegations for assault support a claim of assault under New Mexico law

against Mr. Hernandez individually; (iv) whether Archuleta's allegations against Mr. Hernandez for

his alleged involvement in a conspiracy to commit assault support a claim under New Mexico law;

(v) whether Archuleta's claim for invasion of privacy fails to state a claim upon which the Court can

grant relief because he does not have a constitutional right to avoid publication of his guilty plea and

because he does not allege he was placed in a false light in the public's eye; and (vi) whether

Archuleta states allegations sufficient to show a plausible claim against Mr. Hernandez for breach

of contract.  The Court will grant Mr. Hernandez's Motion to Dismiss the federal claims, because Mr. Hernandez is not a state actor for purposes of a § 1983 claim and Archuleta has not plead sufficient factual allegations to support a plausible claim, under § 1985, that Mr. Hernandez was involved in a conspiracy based on racial animus.  Because Archuleta does not allege sufficient facts to make a plausible claim against Mr. Hernandez for assault or invasion of privacy under New Mexico law, the Court will dismiss the assault and invasion of privacy claims.  The Court will dismiss the state law claims for conspiracy to commit the intentional tort of assault and conspiracy to commit the tort of invasion of privacy for the same reasons.  Archuleta alleges sufficient facts, however, that, when taken as true, make a plausible claim against Mr. Hernandez for breach of contract, and the Court, therefore, will not dismiss the breach of contract claim against Mr. Hernandez at this time.  The Court, therefore, will grant in part and deny in part Mr. Hernandez's Motion to Dismiss.

## FACTUAL BACKGROUND

Archuleta was the defendant in a criminal proceeding in the United States District Court for the District of New Mexico.  See United States v. Francisco Steve Archuleta, No. CR. 10-0107 BB.  The Grand Jury indicted Archuleta on two counts.  See Indictment, filed January 14, 2010 (No. CR 10-0107 BB Doc. 17).  Count One charged Archuleta with committing the following offenses: (i) possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and (ii) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 21 U.S.C. § 846.  See id.  Count Two charged Archuleta with possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Cr. Doc. 17).  Archuleta retained Defendant S. Hernandez as private counsel and was represented during the pendency of the criminal proceeding.  See Entry of Appearance, filed January 4, 2010

(No. CR 10-0107 BB Doc. 7).  On May 13, 2010, Archuleta entered into a Plea Agreement and appeared before the Honorable Lourdes A. Martinez, United States Magistrate Judge, to enter his guilty plea to Count 2 of the Indictment.  See Plea Agreement, filed May 13, 2010 (CR 10-0107 BB Doc. 34).  The United States Probation Office ("USPO") disclosed the Presentence Investigation Report ("PSR") to the Court and to Archuleta on August 4, 2010.  See PSR at 1.  Archuleta was subject to a maximum term of imprisonment of twenty years pursuant to 21 U.S.C. § 841(b)(1)(C).  Archuleta was sentenced on October 20, 2010, to 46 months of incarceration, see Sentencing Minute Sheet, filed October 20, 2010 (CR. 10-0107 BB Doc. 40), in accordance with the terms of the Plea Agreement.  Archuleta currently remains in the custody of the Bureau of Prisons.

## PROCEDURAL BACKGROUND

Archuleta filed his pro se Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 on December 16, 2010 (Doc. 1), seeking redress for alleged civil rights violations and other supplemental state claims which allegedly occurred in connection with the criminal proceeding.  On April 29, 2011, the Court entered a Final Order Dismissing Case (Doc. 5), without prejudice for failure to cure certain filing defects.  Archuleta filed correspondence on May 17, 2011, which was construed by the Court as a Motion to Reopen Case.  See letter from Francisco S. Archuleta to the Court, filed May 17, 2011 (Doc 7).  The Court then entered an Order reopening the case on August 10, 2011 (Doc. 9).  Archuleta filed Francisco S. Archuleta's Pro Se First Amended Civil Rights Complaint pursuant to 42 U.S.C. § 1983, 1985 and Pendant Claims on August 29, 2011.  See Doc. 12 ("Complaint").

Mr. Hernandez filed his Motion to Dismiss on February 23, 2012, seeking dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure because he is not a state actor.  See Doc. 18.  On March 9, 2012, Archuleta filed Francisco Archuleta's Pro Se Reply to Santiago D. Hernandez's

Pro Se Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) Federal Rules of Civil Procedure. <u>See</u> Doc. 22 ("Response"). Archuleta's Response contends that Mr. Hernandez is that, if the Court does determine that Mr. Hernandez "is not subject to suit as a 'State actor' pursuant to 42 U.S.C. § 1983," the Court can still find him liable for §1985 claims and supplemental state claims. <u>See</u> Response ¶ 2, at 2. Archuleta argues that he is not suing Mr. Hernandez only under §1983, but that he seeks redress also under § 1985 and his state claims for assault, invasion of privacy, and breach of contract. <u>See</u> id ¶ 2, at 3. Mr. Hernandez filed Defendant Santiago Hernandez' Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint on September 4, 2012. <u>See</u> Doc. 65 ("Reply"). He asserts that the §1983 claims be dismissed because he is not a state actor, and the §1985 claims should also be dismissed, because Archuleta does not plead any facts to support a conspiracy claim based on racial animus. <u>See</u> Reply at 1.

Mr. Hernandez argues that the state claims fail to state a claim under which relief can be granted and that dismissal is also proper because the Court lacks jurisdiction over the supplemental state claims. For the assault claim, he argues that Archuleta's Complaint appears to assert that: (i) the publication in the <u>Roswell Daily Record</u> of Archuleta being charged with and convicted for distributing drugs in the same news article as another criminal defendant; and (ii) Archuleta being incarcerated in the Otero Prison Facility with that same criminal defendant, resulted in a "hit" being placed on him and gave rise to the alleged assault. <u>See id.</u> at 10. Mr. Hernandez contends that, even if these were grounds for assault, Archuleta fails to plead facts sufficient to "describe the causal connection regarding Defendant Hernandez and his involvement" in the alleged assault. <u>Id.</u>

## RELEVANT LAW REGARDING RULE 12(B)(6) MOTIONS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Under rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of the Archuleta.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).  "The allegations must be enough that, if assumed to be true,  Archuleta plausibly (not just speculatively) has a claim for relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).  A complaint fails to state a claim when it makes conclusory allegations of liability without supporting factual content.  See Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. at 678-79.  A complaint must set forth sufficient facts to raise a plausible inference that the defendant is liable for the misconduct alleged.  See Ashcroft v. Iqbal, 556 U.S. at 677-78.  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555-56.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. V. Twombly, 550 U.S. at 555-56 (internal quotations omitted).  Furthermore, while the court must accept all the factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. at 678-79.  Dismissal should not be granted "unless it appears beyond doubt that the Archuleta can prove no set of facts in support of his claim which would entitle him to relief."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or

> usage, of any State . . . , subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  Section 1983 creates only the right of action; it does not create any

substantive rights; substantive rights must come from the United States Constitution or from

federal statute.  See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)("Section

1983 does not provide a remedy if federal law does not create enforceable rights.").  Rather,

section 1983 authorizes an injured person to assert a claim for relief against a person who, acting

under color of state law, violated the claimant's federally protected rights.  Thus, to state a claim

upon which relief can be granted under section 1983, a plaintiff:

> must establish (1) a violation of rights protected by the federal Constitution or
> created by federal statute or regulation, (2) proximately caused (3) by the conduct
> of a "person" (4) who acted under color of any statute, ordinance, regulation,
> custom[,] or usage, of any State or Territory or the District of Columbia.

Martinez v. Martinez, No. 09-0281, 2010 WL 1608884, at *11 (D.N.M. Mar. 30,

2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

Neither the civil-rights statutes nor the Fourteenth Amendment, however, are a license to the

federal judiciary to displace state law through the creation of a body of general federal tort law.

See Paul v. Davis, 424 U.S. 693, 701 (1976)(Fourteenth Amendment); Griffin v. Breckenridge,

403 U.S. 88, 101–02 (1971)(civil-rights statute).

        Section 1983 provides a cause of action only for violations of a plaintiff's personal rights

and not for the rights of someone else.  See Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir.

1990).  Historically, the guarantee of due process has been applied to deliberate decisions of

government officials to deprive a person of life, liberty, or property.  See Archuleta v. McShan,

-6-

897 F.2d at 497 (quoting <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)).  Moreover, the element of deliberateness requires directing of the misconduct toward the plaintiff before the Due Process Clause is implicated.  <u>See Archuleta v. McShan</u>, 897 F.2d at 499.  In <u>Archuleta v. McShan</u>, the United States Court of Appeals for the Tenth Circuit used the term "bystander" to refer to someone who witnessed a police action, but who is not himself or herself part of the action.  <u>See</u>  897 F.2d at 498.  As such, a bystander is unable to assert the kind of deliberate deprivation of his or her rights necessary to state a due-process claim under section 1983.  <u>See also</u> <u>Grandstaff v. City of Borger</u>, 767 F.2d 161, 172 (5th Cir. 1985)(holding that a rancher's wife and stepsons who witnessed a mistaken shooting of the rancher by police had no constitutional claim for their own emotional injuries under section 1983, because there is no constitutional right to be free from witnessing this police action); <u>Coon v. Ledbetter</u>, 780 F.2d 1158, 1160-61 (5th Cir. 1986)(holding that the wife who witnessed sheriff's deputies shooting into her mobile home had no constitutional claim for emotional injuries, because the deputies' action was not directed towards her).

## LAW REGARDING § 1985 CLAIMS

Section 1985 of Title 42 of the United States Code pertains to the prohibition of conspiracy which interfere with civil rights.  <u>See</u> 42 U.S.C. § 1985.  The Supreme Court recognizes "five broad classes of conspiratorial activity" that § 1985 prohibits.  <u>See</u> <u>Kush v. Rutledge</u>, 460 U.S. 719, 724 (1983).  "Three of the five broad categories . . . relate to institutions and processes of the Federal Government."  <u>Id.</u>  The fourth and fifth classes of § 1985 claims apply to conspiracies to "obstruct the course of justice in state courts" and to "go in disguise on the highway or in the premises of another."  <u>Kush v. Rutledge</u>, 460 U.S. at 724 (internal quotation marks omitted).  Both of these categories require an "intent to deprive their victims of the equal protections of the laws," <u>id.</u>, which

means that there must be some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspiratorial action," Kush v. Rutlege, 460 U.S. at 726 (internal quotation marks omitted).  See Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979)("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985.").

　　　　To succeed on a § 1985 claim, a conspiracy must be proven.  See Dixon v. City of Lawton, 898 F.2d 1443, 1447 (10th Cir. 1990).  To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(discussing conspiracy under § 1983). "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."  Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)(discussing conspiracy under § 1983).

　　　　The Tenth Circuit has held that it is error to "precondition consideration of a plaintiff's §1985(3) claim upon the finding of § 1983 liability."  Dixon v. City of Lawton, 898 F.2d at 1447. "Although neither §1983 nor §1985(3) create any substantive rights, a §1983 claim generally describes a substantive violation of a right secured by the Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws."  Id.

　　　　Section 1985(2) has two parts: the first part pertains to the administration of justice in the federal judicial system, and the second part relates to "conspiracies to obstruct the course of justice in state courts."  Kush v. Rutledge, 460 U.S. at 725.  Thus, the second part of § 1985(2) encompasses "underlying activity that is not institutionally linked to federal interests and that is usually of primary state concern."  Kush v. Rutledge, 460 U.S. at 725.  The second part of § 1985(2)

has been construed to mean that it prohibits any conspiracy to obstruct a state judicial proceeding with the intent to deprive another of equal protection of the laws.  See Kush v. Rutledge, 460 U.S. at 725.  A further distinction between the two components of § 1985(2) is that a violation of the second part requires a showing that the conspirators intended to deprive the injured party of the equal protection of the laws.  See Kush v. Rutledge, 460 U.S. at 725; Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1341 (7th Cir. 1977).  No such animus requirement applies to the first part of § 1985(2).  See Kush v. Rutledge, 460 U.S. at 726.

To state a claim under § 1985(3), a plaintiff must show: (i) a conspiracy, motivated by racially-discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom.  See Paris v. Sw. Bell Tel. Co., 94 Fed. Appx. 810, 815 (10th Cir. 2004); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).  Conclusory allegations that the defendants acted in concert or conspired without specific factual allegations to support such assertions are insufficient to state a claim under § 1985(3).  See Merritt v. Hawk, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001).

The Tenth Circuit has stated that § 1985(3) was intended "to provide redress for victims of conspiracies impelled by a commingling of racial and political motives."  Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985).  "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985."  Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979).  The Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus.  For example, in Paris v. Southwestern Bell Telephone Co., the Tenth Circuit held that the plaintiff's hostile-work-environment claim failed because she did not show racial discriminatory animus on the part of the alleged conspirators.  See 94 Fed. Appx. at 815.

-9-

## NEW MEXICO LAW REGARDING CIVIL CONSPIRACY

"A civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 P.3d 201, 207 (internal quotations and citations omitted), overruled on other grounds by Zarr v. Washington Tru Solutions, LLC, 2009-NMCA-050, ¶ 11, 208 P.3d 919, 922 . The purpose of a civil-conspiracy claim is to "impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." Seeds v. Lucero, 2005-NMCA-067, ¶ 12, 113 P.3d 859, 862 (internal quotations and citations omitted). In Seeds v. Lucero, the New Mexico Court of Appeals listed the elements of a civil conspiracy and compared a civil conspiracy to a criminal conspiracy:

> Civil conspiracy consists of showing [i] that a conspiracy between two or more individuals existed; [ii] that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and [iii] that the plaintiff was damaged as a result of such acts. Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators. Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense.

Seeds v. Lucero, 2005-NMCA-067, ¶ 18, 113 P.3d at 863-64 (internal quotations and citations omitted). "[A]n agreement by itself, without an independent, unlawful act, is not an improper means." Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 P.3d at 207.

## LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v.

Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.

    **1.**      **Supplemental Jurisdiction.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.  Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. 09-0540, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.)(citing 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.)).  In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when

it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

**2.      District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726. Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1)      the claim raises a novel or complex issue of State law,
>
> (2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

-12-

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); Bonadeo v. Lujan, No. 08-0812, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").  At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion.  See

-13-

Gudenkauf v. Stauffer Commc'ns, Inc., 896 F.Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

## ANALYSIS

## I.   ARCHULETA FAILS TO STATE A CLAIM AGAINST SANTIAGO HERNANDEZ FOR CONSPIRACY.

Archuleta must allege deprivation of a constitutional right by a defendant and that the defendant acted under color of state law to state a claim for relief under § 1983.  See West v. Atkins, 487 U.S. 42, 49 (1988); Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009).  Mr. Hernandez argues that the Court should dismiss the claims against him as a matter of law, because he is not a state actor.  See Motion to Dismiss at 5.  Generally, a lawyer representing a client is not . . . a state actor under color of state law within the meaning of Section 1983."  Fisher v. Lynch, 531 F.Supp.2d 1253, 1263 (D.Kan. 2008)(citing Polk County v. Dodson, 454 U.S. 312, 318 (1981)).

A sufficient claim of conspiracy between a private lawyer and state actors could support such an allegation.  See Fisher v. Lynch, 531 F.Supp.2d at 1263 (citing Ellibee v. Fox, 244 F.App'x 839, 843 (10th Cir. 2007)).  Where Archuleta alleges a conspiracy between state actors and private defendants, "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must show specifically presented facts tending to show agreement and concerted action."  Fisher v. Lynch, 531 F.Supp.2d at 1263.

When a plaintiff alleges that the private defendant conspired with an immune official, the plaintiff must demonstrate the existence of sufficient nexus or entanglement between the absolutely immune state official and the private party in relation to the steps taken by each to fulfill the objectives of their conspiracy.  See Shaffer v. Cook, 634 F.2d 1259, 1260 (10th Cir. 1980) (citing

Norton v. Liddel, 620 F.2d 1375, 1380 (10th Cir. 1980)).  The court must resolve these issues on a case-by-case basis.  See Shaffer v. Cook, 634 F.2d at 1260.  A private individual's conduct is "fairly attributable to the state" if two conditions are met.  First, the deprivation must be caused by the exercise of some right or privilege created by the State, or by a rule of conduct imposed by the State or by a person for whom the State is responsible.   Second, the private party must have acted together with, obtained significant aid from state officials, or engaged in conduct otherwise chargeable to the State.  See Pino v. Higgs, 75 F.3d 1461, 1465 (10th Cir.1996)(quoting Wyatt v. Cole, 504 U.S. 158, 162 (1992))(internal quotations and citation omitted)).  See also Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir.1995)(identifying four tests for determining whether particular conduct constitutes state action).

To prove a conspiracy between private parties and the state under § 1983, the plaintiff must show a joint participation, agreement, or "meeting of the minds" to violate constitutional rights.  See Six v. Henry, 42 F.3d 582, 585 (10th Cir. 1994).  There must be sufficient evidence of a conspiracy to prevent the jury from "engag[ing] in sheer speculation and conjecture."  Six v. Henry, 42 F.3d at 585.  The plaintiff must specifically present facts "tending to show agreement and concerted action."  Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir. 1994).

Archuleta's Response contends that Mr. Hernandez is not being sued under 42 U.S.C. § 1983 for violation of civil right.  See Response at 3.  He argues that the only causes of action against Mr. Hernandez are the state claims for assault, invasion of privacy, and breach of contract.  See Response at 3.  Contrary to this assertion, Archuleta's First Amended Complaint generally alleges that Mr. Hernandez conspired with Defendant Renee L. Camacho, the Assistant United States Attorney, to violate certain constitutional rights, and to seize and forfeit Archuleta's property.  See Complaint at 4.  He asserts that this conspiracy acted to force him to plead guilty to the indictment

and give up certain rights. <u>See</u> Complaint at 3.  Archuleta alleges that, in furtherance of this conspiracy, Mr. Hernandez failed to prepare a defense on his behalf and threatened him, thereby forcing him to plead guilty. <u>See</u> Complaint at 4.  Archuleta asserts that, after he realized Mr. Hernandez was not representing him properly and his retainer was depleted, he had no more money or assets available to retain new counsel, so he "had no choice" but to enter a guilty plea.  Complaint at 4.

Despite Archuleta's conflicting contentions in the Complaint compared to the Response, the Court considers whether Archuleta states a cause of action under a conspiracy theory for civil rights violations.  Archuleta alleges facts that the Court will accept as true and make reasonable inferences in Archuleta's favor.  Archuleta alleges that "Mr. Hernandez cooperated with the government, in general," Complaint at 4, but offers no specific facts to demonstrate this cooperation.  He also alleges that Mr. Hernandez, "in a combined effort," sought to make him "waive his right to trial, . . . his right to appeal, and his right to challenge the effectiveness of counsel and the misconduct of prosecutor(s)." Complaint at 3.  Archuleta alleges that his attorney did not perform independent investigation.  <u>See</u> Complaint at 4; ¶ 6, at 6.  He also alleges that his Mr. Hernandez did not file any pretrial motions with the exception of a motion to continue, which Archuleta contends was not filed with his consent.  <u>See</u> Complaint ¶ 8, at 7.  Archuleta contends that the filing of this motion to continue violated his right to a speedy trial.  <u>Id.</u>  Generally, Archuleta complains that his attorney did not adequately represent his interests.  <u>See</u> <u>e.g.</u>, Complaint ¶ 11, at 8. Archuleta also complains about what Mr. Hernandez allegedly agreed or promised to do, and then failed to fulfill the promises.  <u>See</u> Complaint ¶ 6, at 6.  While these facts taken as true are allegations of ineffective assistance of counsel, the facts do not demonstrate any agreement or concerted action to support a claim for conspiracy.

-16-

Archuleta also alleges that Mr. Hernandez: (i) threatened Archuleta "with dire consequences of failing to pay his full fee," Complaint at 4; and (ii) that Archuleta would go to prison until he was an old man, to induce Archuleta's guilty plea. See Complaint ¶ 9, at 7. Even though Archuleta alleges that Ms. Camacho made threats to coerce Archuleta into pleading guilty, see Complaint at 4, these alleged threats do not demonstrate a conspiracy. Notwithstanding these facts, the Complaint is replete with conclusory allegations that the Defendants "cooperated and confederated" to deny him due process without supporting facts. See Complaint ¶ 1, at 5; id. ¶ 7, at 7; id. ¶ 3, at 9-10. There are no facts that "tend to show agreement and concerted action." Hunt v. Bennet, 17 F.3d at 1268.

Archuleta has not alleged any facts to show agreement and concerted action between private attorney Mr. Hernandez and government prosecutor, Ms. Camacho, and therefore has not sufficiently alleged that Mr. Hernandez acted under color of state law through a conspiracy. The Court, therefore, concludes that Archuleta's claims against Mr. Hernandez under 28 U.S.C. §1983 should be granted.

## II.   ARCHULETA FAILS TO STATE A CLAIM AGAINST SANTIAGO HERNANDEZ FOR 42 U.S.C. § 1985 CLAIMS

42 U.S.C. § 1985 provides a private right of action for damages based on private conspiracy and results from Congressional codification of the previous Civil Rights Act of 1871. Griffin v. Breckenridge, 403 U.S. 88 (1971). Archuleta's claims appear to be brought under § 1985(3) which states as follows:

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or

hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. §1985(3).

A plaintiff seeking recovery for a private conspiracy in violation of § 1985(3) must show that: (i) racial, or class-based, invidiously discriminatory animus exists behind the conspirator's actions; and (ii) the conspiracy was aimed at interfering with rights such as the Thirteenth Amendment right to be free from involuntary servitude and being able to travel interstate. See United Brotherhood of Carpenters & Joiners of Am., Local 610, AFL-CIO, et al. v. Scott, 436 U.S. 825, 837 (1983); Bray v. Alexandria Women's Health Clinic, 809 U.S. 263, (1993); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993)(citing United States v. Kozminski, 487 U.S. 931 (1988) ("recognizing the Thirteenth Amendment right to bee free from involuntary servitude"); United States v. Guest, 383 U.S. 745 (1966)("in the Thirteenth Amendment context, the right of interstate travel")).

Archuleta's Complaint does not set forth any facts asserting "racial, or class-based, invidiously discriminatory animus," as § 1985 requires. United Brotherhood of Carpenters & Joiners of Am., Local 610, AFL-CIO, et al. v. Scott, 436 U.S. at 837. Archuleta does not more than cite to § 1985 without identifying any facts to support his claim. Archuleta's Response at 2 asserts

that § 1985 claims are alleged, but then Archuleta states that he alleges only claims for assault, invasion of privacy, and breach of contract against Mr. Hernandez. The Court concludes that the Court should dismiss Archuleta's claims against Mr. Hernandez for conspiracy under § 1985.

## III.   ARCHULETA'S CLAIM FOR ASSAULT AGAINST MR. HERNANDEZ FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Archuleta asserts a claim for assault against Mr. Hernandez. He also alleges however, that "[a]ll defendants named herein, to this point . . . all combined, by act and omission" to place Archuleta "in imminent fear of imminent bodily injury." Complaint ¶ 1, at 10. Additionally, he asserts throughout the general allegations in his Complaint that Mr. Hernandez "cooperated and confederated" with Ms. Camacho, Defendant Travis Holley, the Roswell Police Department Public Information Officer, and Defendant Jessica Palmer, a reporter for the Roswell Daily Record newspaper. See Complaint ¶ 1, at 5; id. ¶ 7, at 7; id. ¶ 3, at 9-10. The Complaint can therefore be construed as alleging a claim against Mr. Hernandez for conspiracy to commit the intentional tort of assault.

### A.   ARCHULETA FAILS TO STATE A CLAIM FOR ASSAULT UPON WHICH RELIEF CAN BE GRANTED.

Archuleta contends that all Defendants, which include Mr. Hernandez, "owed [him] a duty not to place him in imminent fear of imminent bodily injury, and  . . . by act and omission . . .breach[ed] that duty, which was the proximate cause of damages to Archuleta." Complaint at 10. Mr. Hernandez argues that Archuleta's allegations do not support a claim of assault and that Archuleta does not "provide plausible facts" that would give rise to his claim. Reply at 10.

The Tenth Circuit recognizes that, in New Mexico, the torts of assault and battery rely upon the elements of civil assault and battery discussed in the Restatement (Second) of Torts. See Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197, 1209 n. 10 (10th Cir. 2006)(holding that in

a civil case for battery, the proper elements were those in the Restatement (Second) of Torts rather than the statutory elements for criminal battery).

> An actor is subject to civil liability for battery if "he [or she] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . an offensive contact with the person of the other directly or indirectly results."

State v. Ortega, 113 N.M. 347, 440, 827 P.2d 152, 155 (Ct. App. 1992)(quoting Restatement (Second) of Torts § 18 (1965)).  To establish liability for assault under New Mexico law, therefore, a plaintiff must show that the defendant "act[ed] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . [was] thereby put in such imminent apprehension." Restatement (Second) of Torts § 21 (1965).

Archuleta fails to allege how Mr. Hernandez's conduct fits the elements of assault.  See Complaint ¶ 1, at 10.  Mr. Hernandez contends that Archuleta's allegation, that Holley provided public information to the press, serves as the basis for the assault claim.  Mr. Hernandez argues that Archuleta fails to provide a causal connection between the publication and Mr. Hernandez's involvement.  See Reply at 10.  Archuleta's Complaint appears to assert that: (i) the publication in the Roswell Daily Record of Archuleta being charged with and convicted for distributing drugs is in the same news article as the circumstances of the arrest of a similar criminal defendant; and (ii) Archuleta being incarcerated in the Otero Prison Facility with that same criminal defendant resulted in a "hit" being placed on him and gave rise to the alleged assault.  Complaint ¶¶ 2-5, at 8-9.  Archuleta's Complaint alleges that the Defendants committed assault, because they had a duty not to place him in "imminent fear of imminent bodily injury." Complaint at ¶ 1, at 10.  Archuleta fails to allege any facts leading to an inference that Mr. Hernandez acted with an intent to cause harmful or offensive contact between Archuleta and anyone else, or that Mr. Hernandez intended Archuleta

to be placed in an imminent apprehension of such a contact.  Archuleta fails to state sufficient facts

when, taken as true, show that Mr. Hernandez's acts or omissions caused Archuleta to "reasonably

believe" Mr. Hernandez placed him in immediate danger of harm.  New Mexico v. Ortega, 113 N.M.

at 440, 827 P.2d at 155 .  The Court, therefore, dismisses Archuleta's assault claims against Mr.

Hernandez.

> **B.   ARCHULETA'S CLAIM AGAINST MR. HERNANDEZ FOR CONSPIRACY TO COMMIT ASSAULT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Archuleta alleges that Mr. Hernandez conspired with others to commit the intentional tort

of assault against Archuleta by "all combin[ing] by act and omission, to breach th[e] duty [not to

place him in imminent fear of imminent bodily injury]."  Complaint ¶ 1, at 10.  "Civil conspiracy

consists of showing that a conspiracy between two or more individuals existed [and] that specific

wrongful acts were carried out by the defendants pursuant to the conspiracy." Seeds v. Lucero,

2005-NMCA-067, ¶ 18, 113 P.3d at 863-64. Construing all of the allegations in Archuleta's favor,

however, nowhere in his Complaint does he allege any specific acts by Ms. Camacho, Holley, or

Palmer, from which the Court may be able to find that any one of them intended that Archuleta

would be placed in a position of "immediate apprehension of harm." Restatement (Second) of Torts

§ 21 (1965).  Moreover, whether Archuleta is alleging that this position of immediate apprehension

of harm, or imminent bodily injury, is when he plead guilty and was placed in custody, or whether

it was the publication of his conviction in the Roswell Daily Record, Archuleta fails to allege any

facts from which he can plausibly show that Mr. Hernandez conspired with any other Defendant to

accomplish these purposes through unlawful means.  See Los Alamos Nat'l Bank v. Martinez

Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 P.3d 201, 207 ("A civil conspiracy requires

a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful

purpose by unlawful means."), overruled on other grounds by Zarr v. Washington Tru Solutions, LLC, 2009-NMCA-050, ¶ 11, 208 P.3d 919, 922.

## IV. ARCHULETA'S CLAIM FOR INVASION OF PRIVACY FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Archuleta alleges that all Defendants conspired to invade his privacy, because they breached the duty of care not to make him a public person.  See Complaint ¶ 2, at 10.  He contends that the Defendants "reported information that was not true and that [the information] was calculated to do him harm."  Complaint ¶ 2, at 10. New Mexico recognizes that the tort of invasion of privacy is broken down into four categories: "(i) false light; (ii) intrusion [upon seclusion]; (iii) publication of private facts; and (iv) appropriation."  Bhandari v. VHA Southwest Cmty. Health Corp., No. CIV 09-0932 JB/GBW, 2011 WL 1336512, at *18 (D.N.M. Mar. 30, 2011)(Browning, J.)(citing Moore v. Sun Pub. Corp., 118 N.M. 375, 382, 881 P.2d 735, 742 (Ct. App. 1994)). Because all three out of the four categories of the tort of invasion of privacy, aside from intrusion upon seclusion, require publication of information, and Archuleta does not allege that Mr. Hernandez published the Roswell Daily Record article about his arrest and conviction, the Court construes the allegations against Mr. Hernandez as allegations of conspiracy to commit the tort of invasion of privacy.

Archuleta alleges that "[a]ll defendants . . . owed him a duty of care not to make him a public person, and they breached that duty by reporting information that was not true, that was calculated to do him harm."  Complaint ¶ 2, at 10.  The first category of the tort of invasion of privacy that this allegation might fit is the publication of private facts.  See Moore v. Sun Publishing Corp., 118 N.M. 375, 383, 881 P.2d 735, 743 (Ct. App. 1994).  "The elements of public disclosure of private facts are: (i) public disclosure of private facts; (ii) disclosure which would be objectionable to a reasonable person; and (iii) a lack of legitimate public interest in the information."  Bhandari v.

VHA Southwest Cmty. Health Corp., No. CIV 09-0932 JB/GBW, 2011 WL 1336512, at *18 (D.N.M. Mar. 30, 2011) (quoting Fernandez-Wells v. Beauvais, 127 N.M. 487, 489, 983 P.2d 1006, 1008 (Ct. App. 1999)).  See Restatement (Second) of Torts § 652D (1977).  It is well settled that there is "no constitutional right to privacy in information that is readily available to the public, including arrest records, judicial proceedings, and information contained in police reports."  Nilson v. Layton City, 45 F.3d 369, 371 (10th Cir. 1995).

Archuleta's Response asserts that he seeks recovery for invasion of privacy against Mr. Hernandez.  See Response ¶ 2, at 3.  He argues that the Court should not dismiss his invasion of privacy claim, because it is a "harsh remedy" and Mr. Hernandez does not deny any of the facts alleged in the Complaint.  Response ¶ 4, at 4.  Archuleta does not assert that Mr. Hernandez made any disclosure of private facts to the newspaper.  Archuleta's Complaint, rather, alleges that the Roswell Daily Record reported his arrest and another defendant's arrest in the same article, which he asserts implies that he cooperated with authorities, thereby subjecting him to harm.  See Complaint ¶ 3, at 9.  Archuleta fails to allege any facts that could support a claim for invasion of privacy for disclosure of private facts against Mr. Hernandez, either individually or as part of a conspiracy, because arrest records are "information that is readily available to the public," and therefore are not grounds on which the constitution allows liability for invasion of privacy.  Nilson v. Layton City, 45 F.3d at 371 (holding that government disclosures of arrest records does "not implicate the right of privacy," because "[i]nformation readily available to the public is not protected by the constitutional right to privacy.")(citing Paul v. Davis, 424 U.S. 693 (1976)).  Moreover, because the arrest records is information which is readily available to the public, Archuleta does not plausibly allege that the publication of that information was the product of a conspiracy for unlawful purposes, or of a conspiracy to achieve lawful purposes through unlawful means.  See Los Alamos

-23-

Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 P.3d 201, 207 ("A civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.").

The second category of invasion of privacy that Archuleta alleges against Mr. Hernandez is false light.  The tort of "[f]alse light invasion of privacy is a close cousin of defamation."  Andrews v. Stallings, 119 N.M., 478, 492, 892 P.2d, 611, 626 (Ct.App. 1992)(internal quotations omitted). "The essence of this tort, a close cousin of defamation, is the placing of another 'in a false light in the public eye.'"  Moore v. Sun Pub. Corp., 118 N.M. at 382, 881 P.2d at 742 (citation omitted). Criminal matters, such as a conviction, are matters of public concern, and "matters of public concern must hurdle the same constitutionally-based limitations on false light recovery as apply to defamation claims."  Andrews v. Stallings, 119 N.M. at 493, 892 P.2d at 62.  See McNally v. Pulitzer Pub. Co., 532 F.2d 69 (8th Cir. 1976)(holding that publication of facts relating to the conviction were matters of public concern and comprised information in which the public had legitimate interest, and therefore were not actionable for the false light category of the tort of invasion of privacy).  New Mexico law recognizes that "the right of privacy is generally inferior and subordinate to the dissemination of news."  Blount v. T D Publ. Corp., 77 N.M. 384, 389, 423 P.2d 421, 424 (1966).

Archuleta alleges that the Defendants breached the duty not to make him "a public person . . . by reporting information that was not true, that was calculated to do him harm."  Complaint ¶ 2, at 10.  Archuleta's assertion that the reporting of information caused him harm  is based on his allegation that, the fact placing Archuleta's conviction alongside another known drug trafficker would cause those in the drug world to believe that Archuleta helped the police, "was known to Camacho at the time she made the information available to Holley," and when the information was

"reported . . . [by] Palmer, for publication in the [Roswell Daily Record]," that the publication of that information would "impact Archuleta's safety in prison, and the safety of Archuleta's family." Complaint at ¶¶ 3-4, at 9.  The tort of false light invasion of privacy, however, subjects the defendant to liability only  where the defendant's publication of the information causes the plaintiff to be "placed before the public in a false position."  Moore v. Sun Pub. Corp., 118 N.M. at 384, 881 P.2d at 743 (quoting Restatement (Second) of Torts § 652E cmt. b.).  See Restatement (Second) Torts § 652E ("One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy. . . .")(emphasis added).  Archuleta therefore fails to state a claim upon which relief can be granted, because he does not allege that the publication of the circumstances of his conviction in the same article as publication of the conviction of another drug trafficker placed Archuleta in a false light to the public, but only placed him and his family in harm's way because the juxtaposition "indicat[es] to those in the drug world, that Archuleta had cooperated," against the other drug trafficker for a reduced sentence.  Because Archuleta's allegations cannot sufficiently show that he was placed in a false light in front of the public, the Court cannot find that any of the defendants conspired to commit the tort of false light invasion of privacy.  The Court will therefore dismiss Archuleta's claims against Mr. Hernandez for invasion of privacy.

## V.  ARCHULETA'S CLAIM FOR BREACH OF CONTRACT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Archuleta asserts a claim for breach of contract against Mr. Hernandez.  See Complaint ¶ 3, at 10.  He argues that Mr. Hernandez owed him "a duty to deliver on the promise of legal representation. Complaint ¶ 3, at 10.  He also alleges that Mr. Hernandez "promised that he would represent Archuleta on the forfeiture proceedings, something that he did not do."  Complaint at 4.

Mr. Hernandez seeks dismissal of the claim pursuant to rule 12(b)(6), asserting that there was not a breach. Mr. Hernandez argues that Archuleta accepted performance of the contract and, therefore, there was accord and satisfaction. See Complaint at 12. He asserts that Archuleta was satisfied with Mr. Hernandez's representation and points to inconsistencies in the Complaint. See Reply at 12-13).

A contract is a legally enforceable promise that must consist of an offer, an acceptance, consideration, and mutual assent. See NMRA, Civ. UJI 13-801. A person may breach a contract by failing to perform a contractual obligation when the performance is required, unless that performance is otherwise excused. See NMRA, Civ UJI 13-822. Incomplete performance is a breach of contract. See Cochrell v. Hiatt, 97 N.M. 256, 258-59, 638 P.2d 1101, 1103-04 (Ct. App. 1981)(holding that, where the contract called for the roof to be restored to a "healthy" state and guaranteed the work for twenty-five years, because the roof leaked within the twenty-five year period, the defendant's performance was incomplete, and the defendant was in breach of the contract).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

McCasland v. Prather, 92 N.M. 192, 194, 585 P.2d 336, 338 (Ct. App. 1978).

Archuleta alleges that he paid Mr. Hernandez to represent him at a trial. See Complaint at 3. Mr. Hernandez asserts that Archuleta accepted performance of the contract, and never complained to him or to the Court about the representation of Archuleta's criminal defense. See Reply at 12. Archuleta's allegations and Mr. Hernandez's statements support the existence of a valid contract, and Archuleta alleges that he complied with performance by making the payment for legal fees. Because the Court must construe all ambiguities in Archuleta's favor, the Court can also

-26-

reasonably infer that if Archuleta performed any condition precedent, which was likely Archuleta's agreement to cooperate with and assist with his representation by Mr. Hernandez.

Archuleta alleges that Mr. Hernandez "conducted no independent investigation of the facts of the case . . . filed no pretrial motions . . . [and] request[ed] the case be continued in violation of prevailing Supreme Court precedent." Complaint at ¶ 3, at 10.   Archuleta suggests that Mr. Hernandez did not intend to prepare for trial and that this failure was part of the conspiracy against him to violate his civil rights.  See Complaint at 2.  He also alleges that the "acts and omissions of Defendant  Hernandez did proximately cause damages." Complaint ¶ 3, at 10.  These allegations, taken as true, support the requirement that Archuleta alleges damages resulting from the breach.

Mr. Hernandez attempts to demonstrate that the Complaint supports dismissal given certain facts which Archuleta alleges.  First, Mr. Hernandez asserts that Archuleta did not contest his guilty plea or defend that he was not guilty of trafficking narcotics.  See Reply at 12.  He cites to the paragraph 7 on page 9 of the Complaint, where Archuleta "admits that pleading guilty was prudent, given the evidence against him."  Reply at 12.  Mr. Hernandez alleges facts about Archuleta's satisfaction with this representation that lack support with references to the pleadings.

Although conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based, "a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Neither Archuleta nor Mr. Hernandez attach a copy of a written contract for the Court to review.  The Complaint is sufficient to state a claim for negligence and breach of contract.  Taking Archuleta's factual allegations as true, his claim against Mr. Hernandez for breach of contract states a claim upon which relief may potentially be granted.  The Court therefore denies Mr. Hernandez's Motion to Dismiss the claim for breach of contract.

-27-

   In conclusion, the Motion, Response, and Reply demonstrate that Archuleta has failed to state a claim upon with relief can be granted against Mr. Hernandez on claims under §1983, §1985, assault, and for invasion of privacy.  The state law claim for breach of contract remains at this time. The Court will therefore grant in part and deny in part the Motion to Dismiss.

   **IT IS ORDERED** that Defendant Santiago Hernandez's Motion to Dismiss, Defense of Failure to State a Claim, under Rule 12(b)(6), filed February 23, 2012 (Doc. 18), is granted in part and denied in part.  All claims, with the exception of the breach of contract claim, are dismissed with prejudice against Defendant Santiago Hernandez.

                                                    _____
                                                    UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Francisco S. Archuleta
Federal Prison Camp
Florence, Colorado

        *Plaintiff pro se.*

Bryan D Evans
Barbara Marie Smith
Carla Neusch Williams
Atwood, Malone, Turner & Sabin, PA
Roswell, New Mexico

        *Attorneys for Defendants City of Roswell,*
              *Al Solis, Travis Holley*

Richard L. Kraft
Kraft & Hunter, LLP
Roswell, New Mexico

        *Attorney for Defendant Jessica Palmer*

-28-

Santiago David Hernandez
El Paso, Texas

     *Defendant pro se*

Kenneth J. Gonzales
  United States Attorney
Michael H. Hoses
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for Defendant Renee L. Camacho*