# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FRANCISCO S. ARCHULETA,

       Plaintiff,

v.

                                          Civ. 10-cv-1224 JB/RHS

CITY OF ROSWELL, NEW MEXICO, ET AL.,
AL SOLIS, TRAVIS HOLLEY, JESSICA PALMER,
DAVID HERNANDEZ, RENEE L. CAMACHO,

       Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### (Roswell Defendants' Motion to Dismiss)

     **THIS MATTER** is before the Court on Defendants City of Roswell, Al Solis and Travis

Holley's Motion to Dismiss Plaintiff's First Amended Civil Rights Complaint filed March 5,

2012 (Doc. 20) ("Motion to Dismiss").  Plaintiff Francisco S. Archuleta was incarcerated at a

federal facility in Florence, Colorado, and is proceeding *pro se* and *in forma pauperis*.  A review

of the docket reveals that, since filing this lawsuit, Plaintiff has been released from custody (See

Motion to File Amended Complaint and Notice of Change of Address, filed November 8, 2012

(Doc. 76)).  Plaintiff filed a Response to the Motion to Dismiss on April 11, 2012 (Doc. 32)

("Response").  On April 26, 2012, City of Roswell, Al Solis and Travis Holley filed their Reply

(Doc. 35).  The Court having reviewed the Motion (Doc. 20), Response (Doc. 32), Reply (Doc.

35) and relevant case law concludes that Defendants' Motion to Dismiss is well-taken and should

be granted.

## FACTUAL BACKGROUND

Plaintiff was the defendant in a criminal proceeding in the United States District Court for the District of New Mexico.  See United States v. Francisco Steve Archuleta, No. Cr. 10-0107 BB.  On January 14, 2010, the Grand Jury indicted Plaintiff on two counts (Cr. 10-0107, Doc. 17).  Count One charged Plaintiff with committing the following offenses: (i) possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and (ii) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 21 U.S.C. § 846.  Id.  Count Two charged Plaintiff with possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2.  Id. Plaintiff retained Defendant Santiago David Hernandez as private counsel and was represented during the pendency of the criminal proceeding (Cr. 10-0107, Doc. 7).  On May 13, 2010, Plaintiff entered into a Plea Agreement and appeared before the United States Magistrate Judge to enter his guilty plea to Count 2 of the Indictment (Cr. 10-0107, Doc. 34). The United States Probation Office ("USPO") disclosed the Presentence Investigation Report ("PSR") to the Court and to Plaintiff on August 4, 2010.  See PSR at 1.  Plaintiff was subject to a maximum term of imprisonment of twenty (20) years pursuant to 21 U.S.C. § 841(b)(1)(C).  Plaintiff was sentenced on October 20, 2010, to 46 months of incarceration (Cr. 10-0107, Doc. 40), in accordance with the terms of the Plea Agreement.  On November 11, 2010, an article appeared in the Roswell Daily Record written by Defendant Jessica Palmer, Record Staff Writer.  Roswell Police Officer Travis Holley provided Defendant Palmer with information that was disclosed in the article (Doc. 20, Ex 1).  The information Officer Holley provided is public record contained in the Court's docket of Plaintiff's criminal proceeding (Cr. 10-0107).

## PROCEDURAL HISTORY

Plaintiff filed his *pro se* Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 on December 16, 2010 (Doc. 1), seeking redress for alleged civil rights violations and other supplemental state claims which allegedly occurred in connection with the criminal proceeding. On April 29, 2011, the Court entered a Final Order Dismissing Case (Doc. 5), without prejudice for failure to cure certain filing defects. Plaintiff filed correspondence on May 17, 2011, which was construed by the Court as a Motion to Reopen Case (Doc 7). The Court then entered an Order reopening the case on August 10, 2011 (Doc. 9). Plaintiff filed Francisco S. Archuleta's Pro Se First Amended Civil Rights Complaint pursuant to 42 U.S.C. § 1983, §1985 and Pendant Claims on August 29, 2011 (See Doc. 12). Officer Travis Holley, City of Roswell, and Al Solis ("Roswell Defendants") filed their Motion to Dismiss on March 5, 2013, seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure asserting that (1) Officer Holley is entitled to immunity from Plaintiff's alleged §1983 claims, (2) Plaintiff's allegations do not support claims of assault or invasion of privacy against Officer Holley, (3) the City of Roswell cannot be held vicariously liable for an alleged §1983 violation and (4) Plaintiff's allegations fail to state a claim against Police Chief Al Solis (Doc. 20). On April 11, 2012, Plaintiff filed his Response to the Roswell Defendants' Motion to Dismiss (Doc. 32). In his Response, Plaintiff argues that his Complaint has been reviewed for frivolity pursuant to 28 U.S.C. §1915A and that "since the pleading was filed, the Court is making a tacit admission that the facts asserted in the pleading are sufficient" (Doc. 32 at 2). Plaintiff further argues that dismissal is a harsh remedy and therefore should not be granted (Doc. 32 at 9).

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.  Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).  A complaint fails to state a claim when it makes conclusory allegations of liability without supporting factual content.  See Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. at 678.  A complaint must set forth sufficient facts to raise a plausible inference that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. 678.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).  Twombly, 127 S.Ct. 1955, 1965 (2007).  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Id. (internal quotations omitted). Furthermore, while the court must accept all the factual allegations in the complaint as true, it is not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 1950.  Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

**ANALYSIS**

Plaintiff's Complaint alleges that Officer Travis Holley violated Plaintiff's civil rights by attempting to deprive Plaintiff of his life (Doc. 12 at 9).  He asserts pendant claims against all Defendants for assault and invasion of privacy (Doc. 12 at 10).  Finally he asserts claims against

the City of Roswell and Police Chief Al Solis for *respondeat superior* arguing that they are vicariously liable for the acts and omissions of Officer Holley in his official capacity as an employee of the Roswell Police Department (Doc. 12 at 11).

Roswell Defendants assert that the "New Mexico Tort Claims Act ("NMTCA") grants them immunity from liability for all tortious conduct committed by a governmental entity or any public employee unless immunity is specifically waived by the NMTCA" (Doc. 20 at 4).

### CLAIMS AGAINST OFFICER TRAVIS HOLLEY

Plaintiff asserts claims against Officer Holley in his official capacity and individually for allegedly violating Plaintiff's "right to life" (Doc. 12 at 9). Plaintiff contends that his claim is supported by the fact that Officer Holley disclosed "public" information about Plaintiff's criminal proceeding to another defendant, Jessica Palmer, a reporter for the Roswell Daily Record (Doc. 12 at 9). He alleges that the information provided by Officer Holley was "calculated to give the public the impression that Archuleta had cooperated with authorities to assist the police in arresting and prosecuting and sentencing Mario Sauceda."[1] (Doc. 12 at 4). He further alleges that "Defendant Palmer and Defendant Holley published information calculated to have Archuleta put at risk" (Doc. 12 at 5). Plaintiff argues that as a result of the newspaper article reporting his arrest and conviction, a "hit" was placed on him because the article implied that he was a "snitch" (Doc. 12 at 9). Plaintiff also asserts pendant claims against Officer Holley for assault and invasion of privacy based on the same allegations and further claims that Officer Holley conspired with the other defendants to commit assault and invasion of privacy (Doc. 12 at 10).

---

[1] Mario Sauceda is a criminal defendant who was arrested several months prior to Plaintiff and whose sentencing was reported on in the same newspaper article as Plaintiff (Doc. 20, Exhibit 1).

5

A.  Plaintiff Fails To State A Claim For Liability Against Officer Holley In His Official Capacity

Plaintiff sued Officer Holley in his official capacity as an employee of the Roswell Police Department (Doc. 12 at 2).  "An official capacity suit is only another way of pleading an action against an entity of which an officer is an agent." Johnson v. Bd. of County Comm'rs for County of Fremont, 85 F.3d 489, 493 (10th Cir. 1996); Taylor v. Meacham, 82 F.3d 1556, 1564 (10th Cir. 1996). Therefore, Plaintiff's claims against Officer Holley in his official capacity are actually a suit against the City of Roswell.

An injured party is authorized, pursuant to 42 U.S.C. § 1983, to assert a claim for relief against a person, who acting under color of State law, violates the party's federally protected rights.  A claim for relief under § 1983 must allege (1) the deprivation of a federal right, and (2) that the person depriving plaintiff of the right acted under color of state law. To state a claim upon which relief can be granted under § 1983, a Plaintiff:

> must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Martinez v. Martinez, No. 09-0281, 2010 WL 1608884, at *11 (D.N.M. Mar. 30, 2010) (quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

42 U.S.C. § 1985 provides relief where a conspiracy operates to deprive an individual of federally protected rights.  A conspiracy requires the combination of two or more persons acting in concert.  Singer v. Wadman, 745 F.2d 606, 609 (10th Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985).  The Supreme Court recognizes "five broad classes of conspiratorial activity" that § 1985 prohibits. See Kush v. Rutledge, 460 U.S. 719, 724 (1983). "Three of the five broad categories . . . relate to institutions and processes of the Federal Government." Id.  The fourth and fifth classes of § 1985 claims apply to conspiracies to

"obstruct the course of justice in state courts" and to "go in disguise on the highway or in the premises of another." Kush v. Rutledge, 460 U.S. at 724 (internal quotation marks omitted). Both of these categories require an "intent to deprive their victims of the equal protections of the laws" which means that there must be some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspiratorial action," Kush v. Rutlege, 460 U.S. at 726 (internal quotation marks omitted). See Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979)("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985.").

To succeed on a § 1985 claim, a conspiracy must be proven. Dixon v. City of Lawton, 898 F.2d 1443, 1447 (10th Cir. 1990). To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(discussing conspiracy under § 1983). "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)(discussing conspiracy under § 1983).

Plaintiff's complaint asserts claims under §1983 and §1985 against Officer Holley alleging that Plaintiff's constitutional rights were violated as part of a conspiracy but fails set forth any specific facts to identify what right was violated (Doc. 12). He claims that the Defendants conspired to violate his "right to life" (Doc. 12 at 9). While Plaintiff contends that he has alleged sufficient facts to support his claim that Officer Holley was "involved in a conspiracy to violate Archuleta's constitutional rights," he fails to identify what those constitutional rights are (Doc. 32 at 3). He alleges that Officer Holley received false information

from Defendant Camacho and then disclosed that "false information" about Plaintiff's criminal proceeding to Defendant Palmer who "published information calculated to have Archuleta put at risk" (Doc. 12 at 5).  Plaintiff does not offer any facts to demonstrate how this conduct violated his constitutional rights.  Id.  Even when taken as true, the fact that Defendant Camacho gave information to Officer Holley who then provided the information to Defendant Palmer for publication does not demonstrate cooperation between these defendants to deprive Plaintiff of the equal protection of the laws.  Plaintiff demands that the Court jump to the conclusion that each of these Defendants disseminated information knowing the negative implications their disclosures had on Plaintiff and his family.  Plaintiff's contention that Officer Holley "wrongly report[ed] him to be a snitch" while Plaintiff was in custody and left him "unprotected from attack from others in the drug world in custody with him" (Doc. 32 at 3) are conclusory allegations based on Plaintiff's unique interpretation of the article published in the Roswell Daily Record on November 11, 2010 (See, Exhibit A, hereto).  Plaintiff alleges that a "hit" was placed on him (Doc. 12 at 4) but offers no other facts that would support this conclusion.  There are no specific facts about the alleged "hit," only speculation that it existed.

The Court finds his claim to be non-cognizable.  Plaintiff does not articulate what right, protected by the Federal Constitution or created by a federal statute or regulation, was violated as required by Martinez v. Martinez, 2010 WL 160884, at *11.  Moreover, the Court cannot identify the particular statute or regulation that was violated.  Id.  Plaintiff's claim that his "right to life" was violated is vague.  At a minimum, Plaintiff must establish what right protected by the Federal Constitution or created by federal statute or regulation was violated in order to state a claim upon which relief can be granted.  Id.  Even if Plaintiff raised an actual claim, it is

8

undisputed that Plaintiff remains alive and as stated before, has been released from custody and has returned to his residence in Roswell, New Mexico.

The Court considers whether Plaintiff states a cause of action under a conspiracy theory for civil rights violations.  Plaintiff's allegations of a conspiracy between Defendant Camacho, Officer Holley and Defendant Palmer are illusory at best.   Plaintiff alleges that Officer Holley, and Defendants Camacho and Palmer "conspired to deprive Archuleta of his life" (Doc. 12 at 9), citing to the publication of the newspaper article.  His Response reiterates that Officer Holley was involved in a conspiracy to violate Archuleta's civil rights by wrongly reporting him to be a "snitch" (Doc. 32 at 3).  Plaintiff offers no specific facts demonstrating cooperation between Officer Holley, Defendant Camacho and Defendant Palmer.  Plaintiff does not allege any facts demonstrating any agreement or concerted action to support a claim for conspiracy.  Tonkovich v. Kansas Bd. Of Regents, 159 F.3d at 533.

The Court, therefore, concludes that Plaintiff fails to state a claim upon which relief can be granted pursuant to § 1983 as plead against Officer Holley in his official capacity, which is actually a claim against the City of Roswell.  Equally unpersuasive is Plaintiff's claim against Officer Holley for violation of 42 U.S.C. § 1985.  Although Plaintiff alleges that Officer Holley participated in a conspiracy to violate Plaintiff's right to life, the facts demonstrate that Plaintiff fails to state a claim under § 1985 upon which relief can be granted.   The Court recommends that these claims be dismissed with prejudice.

B.  Plaintiff Fails to State A Claim For Liability Against Officer Holley Individually

The Supreme Court has made clear, that in alleging a § 1983 action against a government agent in the agent's individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft

v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  As discussed above, Plaintiff asserts a non-cognizable claim.  The Court finds that the facts do not allege a constitutional violation.

Even if the Court concluded that Plaintiff alleged a constitutional rights violation, Officer Holley is entitled to qualified immunity.  Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) ("government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").  When determining whether an individual defendant is entitled to qualified immunity, the Court "must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id.  The facts do not support a claim against Officer Holley in his individual capacity.  Plaintiff's Complaint alleges that Officer Holley acted in his capacity as Public Information Officer for the Roswell Police Department and provided allegedly false information to Defendant Palmer about his criminal case (Doc. 12 at 9).  Newspapers routinely report on criminal cases.  It would appear to the Court that Officer Holley is the contact between the Roswell Police Department and the media for informational purposes (Doc. 12 at 2; Doc. 20, Ex. 1).  This suggests that any information Officer Holley disseminated to the media would occur in the course and scope of his employment with the police department notwithstanding any facts to the contrary.  Plaintiff brings the claim against Officer Holley in his individual capacity without setting forth any factual basis.  In fact, other than Plaintiff's assertions that Officer Holley "lied" to Defendant Palmer, there are no specific allegations that Officer Holley was acting in an unofficial capacity. In his Complaint, Plaintiff contradicts himself by admitting that Officer Holley committed the

alleged violation "within the course and scope of his employment" (Doc. 12 at 11).

For these reasons, the Court finds that Officer Holley's conduct, as alleged by Plaintiff, was in his official capacity and that he is entitled to qualified immunity for any claims against him in his individual capacity.  The Court, therefore, concludes that Plaintiff fails to state a claim upon which relief can be granted against Officer Holley in his individual capacity and further, recommends dismissal of Plaintiff's claims with prejudice.

### C.  Plaintiff Fails to State A Claim Against Officer Holley For Assault

Plaintiff asserts a claim for assault against Officer Holley (Doc. 12 at 10).  Plaintiff alleges that "[a]ll defendants . . . combined, by act and omission," and placed Plaintiff "in imminent fear of imminent bodily injury."  Id.  Plaintiff alleges that all of the Defendants including Officer Holley had a duty not to place him in "imminent fear of imminent bodily injury," and breached their duty which "proximately caused damages" to Plaintiff.  Id.   Roswell Defendants argue that Plaintiff's allegations do not support a claim of assault (Doc. 20 at 6).

The Tenth Circuit recognizes that, in New Mexico, the torts of assault and battery rely upon the elements of civil assault and battery discussed in the Restatement (Second) of Torts. See Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197, 1209 n. 10 (10th Cir. 2006) (holding that in a civil case for battery, the proper elements were those in the Restatement (Second) of Torts rather than the statutory elements for criminal battery).

> An actor is subject to civil liability for battery if "he [or she] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . an offensive contact with the person of the other directly or indirectly results."

State v. Ortega, 113 N.M. 347, 440, 827 P.2d 152, 155 (Ct. App. 1992) (quoting Restatement (Second) of Torts § 18 (1965)). To establish liability for assault under New Mexico law, therefore, a plaintiff must show that the defendant "act[ed] intending to cause a harmful or

offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . [was] thereby put in such imminent apprehension." <u>Restatement (Second) of Torts</u> § 21 (1965).

Plaintiff's Complaint fails to demonstrate how Officer Holley's conduct corresponds to the elements of assault (Doc. 12).  Roswell Defendants argue that Plaintiff's Complaint does not contain any "factual allegations that Travis Holley advised the press that Plaintiff had 'snitched' on Mario Saucedo," that their cases were in any way related, or that Officer Holley directed Plaintiff and Mr. Saucedo to be held in the same facility (Doc. 20 at 5; Doc. 35 at 2).  Roswell Defendants contend that the "sole basis for Plaintiff's claim of assault is that Officer Holley allegedly falsely reported that Mario Saucedo and Plaintiff were involved in the same drug case and that Plaintiff was a snitch" (Doc. 35 at 1).  They further contend that Officer Holley neither reported to the newspaper that the drug cases were in any way related nor that Plaintiff "snitched" on Mario Saucedo.  <u>Id</u>. at 2.  In his Complaint, Plaintiff appears to assert (1) that the publication in the <u>Roswell Daily Record</u> stating that Plaintiff was arrested, charged and convicted of distributing drugs in the same amount as Mario Saucedo meant that both criminal defendants were involved in the same drug case, (2) that because both criminal defendants are identified in the same article, Plaintiff snitched on the other defendant, (3) that because of the article in the newspaper a "hit" was placed on him and (4) that the police intentionally placed Plaintiff and Mario Saucedo in Otero County Prison "to see what would happen" (Doc. 12 at 9).  Plaintiff argues that Officer Holley does not deny Plaintiff's allegations and that Officer Holley also fails to address that "the allegations set forth in Archuleta's complaint are presumed to be true" (Doc. 32 at 5).  Plaintiff concludes that for all of these reasons his Complaint contains sufficient factual allegations to thwart a motion to dismiss.

The Roswell Daily Record article reports that Plaintiff was arrested in December 2009, a couple of months after Mario Sauceda, who was arrested in October 2009 (Doc. 20, Exhibit 1). There is no reference in the article that the criminal defendants or their cases were related.  The Court does not see how the article connects Plaintiff and Mario Sauceda simply because of the type of drugs confiscated at arrest and the fact that both defendants were Roswell residents (Doc. 20, Exhibit 1).  Officer Holley refers to Plaintiff's and Mario Sauceda's cases in the plural, "[i]n both cases."  Id.

Plaintiff assumes and wrongly concludes that the article implies he is a "snitch." Id.  The article does not expressly state that Plaintiff is a "snitch."  Plaintiff makes conclusory allegations that the article states that Plaintiff is a snitch because the criminal cases are reported jointly and that he received a lesser sentence than Mario Sauceda. (Doc. 12 at 9).

The Court finds it unlikely that any information contained in this article would result in a "hit" being placed on Plaintiff.  Plaintiff's interpretation would require the Court to find some subliminal meaning that only other "drug traffickers" could interpret.  Plaintiff is never explicitly identified as an informant nor is there any implication of cooperation on his part.

Finally, the article does not state where Plaintiff or Mario Sauceda were being held in custody nor does it state that Officer Holley determined where either would be incarcerated.  Id. Plaintiff makes another conclusory allegation that the police "put together" Plaintiff and Mario Sauceda "to see what would happen" (Doc. 12 at 9).   Considering Officer Holley's position[2] with the Roswell Police Department, the Court finds it unlikely he would have any control over determining custody arrangements for criminal defendants.  Plaintiff fails to allege any facts to support a conclusion that Officer Holley had any control over or determined where Plaintiff or

---

[2] Officer Holley is identified in Plaintiff's Complaint (Doc. 12 at 2) and in the Roswell Daily Record article dated November 11, 2010 (Doc. 20, Exhibit 1) as the Roswell Police Department Public Information Officer.

Mario Sauceda would be held in custody (Doc. 12 at 9).  He argues that the information in the article will be interpreted by the "drug world" differently than the article's plain meaning (Doc. 32 at 5).  The Court refuses to entertain Plaintiff's speculation as fact.

The Complaint is devoid of any facts that Officer Holley reported "public information" to the press with the intent to cause harmful or offensive contact between Plaintiff and anyone else, or that he intended that Plaintiff be placed in imminent apprehension of such a contact.  Restatement (Second) of Torts § 21 (1965).  Plaintiff fails to state sufficient facts, when taken as true, demonstrating that Officer Holley's acts or omissions caused Plaintiff to "reasonably believe" Officer Holley placed him in immediate danger of harm.  New Mexico v. Ortega, 113 N.M. at 440, 827 F.2d at 155.  Plaintiff's explanation of the "drug world" interpretation of the disseminated information is unpersuasive in light of a "plain reading" of the article.  The Court concludes that Plaintiff fails to state a claim upon which relief can be granted for assault and therefore, recommends dismissal of Plaintiff's assault claim against Mr. Holley with prejudice.

D. Plaintiff Fails To State A Claim Against Officer Holley For Invasion of Privacy

Plaintiff also asserts a claim for Invasion of Privacy against Defendant Travis Holley (Doc. 12 at 10).  Plaintiff alleges that all Defendants conspired to invade his privacy because they breached the duty of care not to make him a public person.  Id.  He contends that the Defendants, including Officer Holley, "report[ed] information that was not true, that was calculated to do him harm" (Doc. 12 at 10).

New Mexico recognizes that the tort of invasion of privacy is broken down into four categories: "(i) false light; (ii) intrusion [upon seclusion]; (iii) publication of private facts; and (iv) appropriation." Bhandari v. VHA Southwest Cmty. Health Corp., No. CIV 09-0932 JB/GBW, 2011 WL 1336512, at *18 (D.N.M. Mar. 30, 2011)(Browning, J.) (citing Moore

14

v. Sun Pub. Corp., 118 N.M. 375, 382, 881 P.2d 735, 742 (Ct. App. 1994)).  Based on Plaintiff's allegations that Officer Holley had false information published with the intent to harm Plaintiff, publication of private facts and false light appear to be the only invasion of privacy categories implicated.

One category of the tort of invasion of privacy that Plaintiff appears to allege against Officer Holley is the publication of private facts. Moore v. Sun Publishing Corp., 118 N.M. 375, 383 (Ct.App.1994).  "The elements of this tort are public disclosure of private facts, disclosure which would be objectionable to a reasonable person, and a lack of legitimate pubic interest in the information. Fernandez-Wells v. Beauvais, 127 N.M. 487, 489 (citing W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 117, at 856-57 (5th ed.1984); Restatement (Second) of Torts § 652D.   It is well settled that there is "no constitutional right to privacy in information that is readily available to the public, including arrest records, judicial proceedings, and information contained in police reports."  Nilson v. Layton City, 45 F.3d 369, 371 (10th Cir. 1995).

Plaintiff asserts that Defendant Holley conspired with Defendants Camacho and Palmer "to have untruthful information reported from prosecution records, as police information, in a newspaper" (Doc. 32 at 6).  His belief that the article "indicated that Archuleta was cooperating against Saucedo" is incredulous.  Id.  He argues that the reporting of his case in the same article as another criminal defendant invades his privacy because "THE DRUG WORLD" will ascertain that he is a snitch (Doc. 32 at 6).  Plaintiff attempts to argue that there is a difference between reporting about his criminal case individually as opposed to jointly with another criminal case. Id.

Ultimately, Plaintiff fails to allege sufficient facts that support a claim for invasion of

privacy.  First, he does not dispute that his criminal case is a matter of public record.  <u>Id</u>.  He also fails to allege that there is a lack of public interest because arrest records are "information that is readily available to the public," and therefore are not grounds on which the constitution allows liability for invasion of privacy.  <u>Nilson v. Layton City</u>, 45 F.3d at 371.  Finally, Plaintiff cannot plausibly allege that Officer Holley had any control over the article written and published by the Roswell Daily Record, an entity completely independent from the Roswell Police Department or the City of Roswell.  The Court will not make wild inferences from the language of the newspaper article to find some alleged hidden meaning that apparently only those in the "drug world" understand.

The other category of invasion of privacy that Plaintiff appears to allege against Officer Holley is false light. The tort of "[f]alse light invasion of privacy is a close cousin of defamation." <u>Andrews v. Stallings</u>, 119 N.M., 478, 492, 892 P.2d, 611, 626 (Ct. App. 1992)(internal quotations omitted).  "The essence of this tort, a close cousin of defamation, is the placing of another 'in a false light in the public eye.'" <u>Moore v. Sun Pub. Corp</u>., 118 N.M. at 382, 881 P.2d at 742 (citation omitted).  Criminal matters, such as a conviction, are matters of public concern, and "matters of public concern must hurdle the same constitutionally-based limitations on false light recovery as apply to defamation claims." <u>Andrews v. Stallings</u>, 119 N.M. at 493, 892 P.2d at 62. See <u>McNally v. Pulitzer Pub. Co</u>., 532 F.2d 69 (8th Cir. 1976) (holding that publication of facts relating to the conviction were matters of public concern and comprised information in which the public had legitimate interest, and therefore were not actionable for the false light category of the tort of invasion of privacy).  New Mexico law recognizes that "the right of privacy is generally inferior and subordinate to the dissemination of news." <u>Blount v. T D Publ. Corp</u>., 77 N.M. 384, 389, 423 P.2d 421, 424 (1966).

Plaintiff alleges that Defendants breached their duty not to make him "a public person . . . by reporting information that was not true, that was calculated to do him harm" (Doc. 12 at 10). Plaintiff's assertion that the reporting of information caused him harm is based on his allegation that, the fact placing Plaintiff's conviction alongside another known drug trafficker would cause those in the drug world to believe that Plaintiff helped the police, "was known to Camacho at the time she made the information available to Holley," and when the information was "reported . . . [by] Palmer, for publication in the [Roswell Daily Record]," that the publication of that information would "impact Archuleta's safety in prison, and the safety of Archuleta's family" (Doc. 12 at 9). The tort of false light invasion of privacy, however, subjects the defendant to liability only where the defendant's publication of the information causes the plaintiff to be "placed before the public in a false position." Moore v. Sun Pub. Corp., 118 N.M. at 384, 881 P.2d at 743 (quoting Restatement (Second) of Torts § 652E cmt. b.). See Restatement (Second) Torts § 652E ("One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy. . . .").

First, Officer Holley is not an employee of the newspaper and did not publish any information about Plaintiff. Second, Plaintiff does not allege that Officer Holley provided false information to Defendant Palmer. Plaintiff does not dispute the accuracy of the article, he states "the information reported separately did not violate anything" referring to how his criminal proceeding was reported (Doc. 32 at 6). Finally, the information reported in the article was factually correct and can be confirmed by review of the Court's docket (Cr. 10-0107, Doc. 1, *et. seq.*)

Plaintiff fails to state a claim upon which relief can be granted, because he does not

allege that the publication of the circumstances of his conviction in the same article as

publication of the conviction of another drug trafficker placed Plaintiff in a false light to the

public, but only placed him and his family in harm's way because the juxtaposition "indicat[es]

to those in the drug world, that Archuleta had cooperated," against the other drug trafficker for a

reduced sentence.  Plaintiff's nonsensical allegations cannot sufficiently show that he was placed

in a false light in front of the public.    The Court therefore recommends dismissal of Plaintiff's

claims against Officer Holley for invasion of privacy with prejudice.

## CLAIMS AGAINST CITY OF ROSWELL AND AL SOLIS

Plaintiff asserts a claim for vicarious liability against the City of Roswell and Al Solis,

Chief of Police for Roswell, New Mexico, for the acts and omissions of Officer Holley (Doc. 12

at 11).  Plaintiff sues Chief Solis in his official capacity (Doc. 12 at 2).  Notably, Plaintiff admits

that Chief Solis was not the police chief at the time of the alleged constitutional violations (Doc.

12 at 11) but, Plaintiff still contends that Chief Solis remains liable.  As stated previously "An

official capacity suit is only another way of pleading an action against an entity of which an

officer is an agent." Johnson, 85 F.3d at 493; Taylor, 82 F.3d at 1564. Therefore, Plaintiff's

claim against Chief Solis in his official capacity is actually a suit against the City of Roswell.

Plaintiff alleges that liability arises from Officer Holley's conduct which was "committed

within the course and scope of his employment" (Doc. 12 at 11).  He argues that Officer Holley

was not trained or supervised properly (Doc. 32 at 7) and he wants the City of Roswell and the

police chief held responsible.

A municipality or a police chief in his official capacity "cannot be held liable for

constitutional violations when there was no underlying constitutional violation by any of its

officers" Martinez v. Beggs, 563 F.3d 1082, 1091 (10th Cir. 2009).  However, "[a] municipality

can be found liable under section 1983 only where the municipality itself causes the

constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1997).

> "A municipality may not be held liable under § 1983 solely because its employees
> inflicted injury on the plaintiff. Rather, to establish municipal liability, a plaintiff
> must show 1) the existence of a municipal policy or custom, and 2) that there is a
> direct causal link between the policy or custom and the injury alleged."

Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010) (citing Hinton v. City of

Elwood, 997 F.2d 774, 782 (10th Cir. 1993).  Examples of municipal policies or customs

include:

> (1) "a formal regulation or policy statement"; (2) an informal custom
> "amoun[ting] to 'a widespread practice that, although not authorized by written
> law or express municipal policy, is so permanent and well settled as to constitute
> a custom or usage with the force of law' "; (3) "the decisions of employees with
> final policymaking authority"; (4) "the ratification by such final policymakers of
> the decisions-and the basis for them-of subordinates to whom authority was
> delegated subject to these policymakers' review and approval"; or (5) the "failure
> to adequately train or supervise employees, so long as that failure results from
> 'deliberate indifference' to the injuries that may be caused."

Bryson v. City of Oklahoma City, 627 F.3d at 788. (citing Brammer-Hoelter v. Twin Peaks

Charter Acad., 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

Plaintiff argues that dismissal is not proper because "[Officer] Holley, whose complained

of conduct is outlined in great detail in the complaint" (Doc. 32 at 7).   He further argues that

there is a fact question about whether the alleged failure to train and supervise Officer Holley

"was deliberately indifferent." Id.   Finally, Plaintiff concludes that he has "specifically pleaded

vicarious liability" and therefore the claims should not be dismissed.  Id.  Defendants argue that

Plaintiff has not pled any allegations that a municipal policy or custom formed the basis of the

alleged constitutional violation (Doc. 20 at 8).  The Court agrees.

Plaintiff has not asserted any facts suggesting that the City of Roswell's own wrongful

conduct caused his alleged injury. City of Canton, Ohio v. Harris, 408 U.S. 378, 385 (1989).  He

19

fails to set forth any facts or identify any municipal policy or custom that inflicted injury on Plaintiff.  Id.   The Complaint makes conclusory allegations that the City of Roswell "is vicariously liable for the acts and omission of its employee" (Doc. 12 at 11).  Overall, Plaintiff neglects to allege any facts to support deliberate indifference on the part of the City of Roswell in the training or supervision of Officer Holley.  Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011).  Liability only exists where a municipality follows a course of action that it knows or should have known causes violations of constitutional rights. Id. at 1360.   The facts as alleged do not demonstrate any course of action that the City of Roswell knew or should have known would violate Plaintiff's constitutional rights.  Id.   Officer Holley's conduct in providing public information about Plaintiff's arrest and sentencing to Defendant Palmer is not a civil rights violation.

In addition, the City is protected by the New Mexico Tort Claims Act.  "The New Mexico Tort Claims Act preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived." Fernandez v. Mora-San Miguel Elec. Co-Op, Inc.; N.M. Stat. § 41-4-4(A). Section 41-4-12 of the Act waived sovereign immunity for certain enumerated tort claims involving the conduct of a law enforcement officer and for negligence that causes a specific tort.  § 41-4-12 See Oliveros v. Mitchell, 449 F.3d 1091, 1096 (10th Cir. 2006).  Immunity is waived

> for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

> NMSA 1978 § 41-1-12.

As discussed previously, the Plaintiff's allegations do not support a claim for the pendant claims against these Defendants. Therefore, the NMTCA further prevents Plaintiff from pursuing these claims.

Finally, Plaintiff makes specific claims that Chief Solis and thereby, the City of Roswell failed to take remedial measures.  The Court agrees with Defendants that Plaintiff appears to seek an injunction (Doc. 20 at 9).  To obtain an injunction, Plaintiff must allege that "has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct." City of Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1982).  As injunction also requires that the harm be "immediate or irreparable."  Id.  Plaintiff fails to assert injury or danger of injury nor does he assert immediate or irreparable harm.

For all of these reasons, the Court concludes that the Plaintiff fails to state a claim upon which relief can be granted and therefore, recommends that Plaintiff's claims against the City of Roswell and Chief Al Solis be dismissed with prejudice.

## RECOMMENDATION

The Court concludes that Defendants, Travis Holley, City of Roswell and Al Solis are entitled to the relief requested and that their Motion to Dismiss (Doc. 20) should be granted. Therefore, the Court recommends that Defendant's Motion to Dismiss (Doc. 20) be GRANTED and Plaintiff's claims be dismissed with prejudice.

Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant 28 U.S.C. § 636(b)(1), file written objections to these proposed findings and recommended disposition.  A party must file any objections with the clerk of the district court within the fourteen (14) day period allowed if that party would like to

have appellate review of the proposed findings and recommendations.  If objections are not filed,

appellate review will not be allowed.

_Robert Hayes Scott_
_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE

# Exhibit A

A2 Thursday, November 11, 2010

## GENERAL

Roswell Daily Record

# Former city worker sentenced for drug trafficking

**JESSICA PALMER**
**RECORD STAFF WRITER**

Frank Archuleta, 48, a former Roswell city employee was sentenced to four years on charges of conspiring with intent to distribute 454 grams of methamphetamine and 340 grams of cocaine.

Archuleta was arrested in December 2009, said RPD Public Information Officer Travis Holley

When Archuleta was first contacted at his job with the city of Roswell Street Department, he had $11,600 in cash and 12.7 grams of cocaine in his personal vehicle.

The combined task force of the Roswell Police Department and FBI confiscated seven firearms, eight surveillance cameras, three flat-screen television sets, each hooked up to the surveillance cameras, three police scanners and 0.2 grams of methamphetamine from his home

"At the time we suspected that he had some 15 to 20 vehicles," said Holley.

The Drug Task Force seized three show vehicles, a 1955 Chevy pickup and a Dually pickup and two Harley Davidson motorcycles.

Mario Sauceda, 29, was sentenced to 188 months, or 15.6 years, also for conspiring with intent to distribute 454 grams of methamphetamine and 340 grams of cocaine.

He was apprehended on Oct. 13, 2009. He admitted to the two agents at the time of his arrest that he was on the way to Albuquerque to purchase one-half pound of methamphetamine.

Sauceda had one ounce of methamphetamines in his vehicle and $659 in cash when he was first contacted, Holley said.

As often happens with drug trafficking," said Holley. They had been fronting drugs to Sauceda. He owed $11,000 to his suppliers for the methamphetamines."

It was determined that they had distributed up to 20 pounds of methamphetamine in the area. "In both cases, all of the drugs were brought in from outside Roswell," Holley said

City Manager Larry Fry said he could not comment on personnel matters.
j.palmer@roswell-record.com

**Honoring veterans**



