IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANCISCO S. ARCHULETA,

    Plaintiff,

v.                                                          Civ. 10-1224 JB/RHS

CITY OF ROSWELL, NEW MEXICO,
AL SOLIS, TRAVIS HOLLEY, JESSICA PALMER,
DAVID HERNANDEZ, and RENEE L. CAMACHO,

    Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant Jessica Palmer's Motion to Dismiss filed October 3, 2012 ("Motion to Dismiss") (Doc. 74) which seeks to dismiss Plaintiff's claims for civil rights violations pursuant to 28 U.S.C. §1984, §1985 and pendent claims against Ms. Palmer. Plaintiff Francisco S. Archuleta was incarcerated at a federal facility in Florence, Colorado, and is proceeding *pro se* and *in forma pauperis*. A review of the docket reveals that, since filing this lawsuit, Plaintiff has been released from custody (*See* Motion to File Amended Complaint and Notice of Change of Address, filed November 8, 2012 (Doc. 76)). Plaintiff has not filed a Response to Ms. Palmer's Motion to Dismiss. The Court having considered the Complaint (Doc. 12), Ms. Palmer's Answer (Doc. 19), the Motion to Dismiss (Doc. 74) and relevant authorities recommends dismissal of Plaintiff's claims against Ms. Palmer for failure to state a claim upon which relief may be granted, and further recommends denial of the Motion to Dismiss as moot.

**FACTUAL BACKGROUND**

Plaintiff was the defendant in a criminal proceeding in the United States District Court for the District of New Mexico.  *See* United States v. Francisco Steve Archuleta, No. Cr. 10-0107 BB.  On January 14, 2010, the Grand Jury indicted Plaintiff on two counts (Cr. 10-0107, Doc. 17).  Count One charged Plaintiff with committing the following offenses: (i) possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and (ii) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 21 U.S.C. § 846.  Id.  Count Two charged Plaintiff with possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2.  Id. Plaintiff retained Defendant Santiago David Hernandez as private counsel and was represented during the pendency of the criminal proceeding (Cr. 10-0107, Doc. 7).  On May 13, 2010, Plaintiff entered into a Plea Agreement and appeared before a United States Magistrate Judge to enter his guilty plea to Count 2 of the Indictment (Cr. 10-0107, Doc. 34). The United States Probation Office ("USPO") disclosed the Presentence Investigation Report ("PSR") to the Court and to Plaintiff on August 4, 2010.  *See* PSR at 1.  Plaintiff was subject to a maximum term of imprisonment of twenty (20) years pursuant to 21 U.S.C. § 841(b)(1)(C).  Plaintiff was sentenced on October 20, 2010, to 46 months of incarceration (Cr. 10-0107, Doc. 40), in accordance with the terms of the Plea Agreement.  On November 11, 2010, an article appeared in the Roswell Daily Record written by Ms. Palmer, Record Staff Writer.  Roswell Police Officer Travis Holley provided Ms. Palmer with information that was disclosed in the article (Doc. 20, Ex 1).  The information reported in the article is public record contained in the Court's docket of Plaintiff's criminal proceeding (Cr. 10-0107).

## PROCEDURAL HISTORY

Plaintiff filed his *pro se* Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 on December 16, 2010 (Doc. 1), seeking redress for alleged civil rights violations and other supplemental state claims which allegedly occurred in connection with the criminal proceeding. On April 29, 2011, the Court entered a Final Order Dismissing Case (Doc. 5), without prejudice for failure to cure certain filing defects. Plaintiff filed correspondence on May 17, 2011, which was construed by the Court as a Motion to Reopen Case (Doc 7). The Court then entered an Order reopening the case on August 10, 2011 (Doc. 9). Plaintiff filed Francisco S. Archuleta's *Pro Se* First Amended Civil Rights Complaint pursuant to 42 U.S.C. § 1983, §1985 and Pendant Claims on August 29, 2011 (See Doc. 12). On February 29, 2012, Ms. Palmer filed Defendant Jessica Palmer's Answer to Francisco S. Archuleta's Pro Se First Amended Civil Right Complaint Pursuant to 42 U.S.C. 1983, 1985 and Pendant Claims ("Answer") (Doc. 19). Ms. Palmer's Answer asserted a number of affirmative defenses including failure to state a claim upon which relief may be granted. Id. at 5. Ms. Palmer filed her Motion to Dismiss on October 3, 2012 asserting that Ms. Palmer's actions were conducted in her capacity as a reporter for the Roswell Daily Record (Doc. 74). As stated above, Plaintiff failed to respond to the Defendant's Motion to Dismiss.

On March 29, 2013, the Court dismissed Plaintiff's claims against Defendant Renee L. Camacho that arose from the identical facts set forth herein (Doc. 81). The Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 79), which recommends that Plaintiff's claims, again arising from the identical factual basis, against Defendants Travis Holly, City of Roswell and Al Solis be dismissed with prejudice, remains pending District Court review. The Court now considers the claims against Ms. Palmer.

**LEGAL STANDARD**

Fed. R. Civ. P. 12(b)(6) "authorizes dismissal whenever a complaint fails to state a claim on which relief can be granted." McKinney v. State of Oklahoma, Depart. of Human Services, Shawnee, OK, 925 F.2d 363, 365 (10th Cir. 1991).  The Tenth Circuit has held that a court may dismiss a complaint *sua sponte* under Fed.R.Civ.P. 12(b)(6) where it is "patently obvious that Plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile." Id. at 365.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief. Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).  A complaint fails to state a claim when it makes conclusory allegations of liability without supporting factual content.  See Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. at 678.  A complaint must set forth sufficient facts to raise a plausible inference that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Twombly, 550 U.S. at 555.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Id. (internal quotations omitted). Furthermore, while the court must accept all the factual allegations in the complaint as true, it is not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 555.  Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

## ANALYSIS

Plaintiff's Complaint asserts claims under §1983, §1985 and pendant claims against Ms. Palmer (Doc. 12). An injured party is authorized, pursuant to 42 U.S.C. § 1983, to assert a claim for relief against a person, who acting under color of State law, violates the party's federally protected rights. A claim for relief under § 1983 must allege (1) the deprivation of a federal right, and (2) that the person depriving plaintiff of the right acted under color of state law. To state a claim upon which relief can be granted under § 1983, a Plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia. Martinez v. Martinez, No. 09-0281, 2010 WL 1608884, at *11 (D.N.M. Mar. 30, 2010) (quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)). Generally §1983 claims are brought against state actors however, a plaintiff can assert a §1983 claim against a private actor where the private actor conspires with a state actor to violate a plaintiff's civil rights. Cite

42 U.S.C. § 1985 provides relief where a conspiracy, between private actors, operates to deprive an individual of federally protected rights. A conspiracy requires the combination of two or more persons acting in concert. Singer v. Wadman, 745 F.2d 606, 609 (10th Cir. 1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985). The Supreme Court recognizes "five broad classes of conspiratorial activity" that § 1985 prohibits. See Kush v. Rutledge, 460 U.S. 719, 724 (1983). "Three of the five broad categories . . . relate to institutions and processes

of the Federal Government." Id.  The fourth and fifth classes of § 1985 claims apply to conspiracies to "obstruct the course of justice in state courts" and to "go in disguise on the highway or in the premises of another." Kush v. Rutledge, 460 U.S. at 724 (internal quotation marks omitted). Both of these categories require an "intent to deprive their victims of the equal protections of the laws" which means that there must be some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspiratorial action," Kush v. Rutlege, 460 U.S. at 726 (internal quotation marks omitted). *See* Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979) ("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985.").  To succeed on a § 1985 claim, a conspiracy must be proven. Dixon v. City of Lawton, 898 F.2d 1443, 1447 (10th Cir. 1990).  To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(discussing conspiracy under § 1983).  "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)(discussing conspiracy under § 1983).

## I.
## Plaintiff Fails To State A Claim Against Ms. Palmer For Constitutional Violation Under §1983 Because She Is Not A State Actor

Plaintiff must allege facts that demonstrate Ms. Palmer deprived him of a constitutional right and that she was acting under color of state law in order to state a claim for relief under §1983.  The Tenth Circuit has identified four tests that can be used to determine whether private parties should be deemed state actors: (1) the public function test, (2) the nexus test, (3) the symbiotic relationship test, and (4) the joint action test. Johnson v. Rodriguez, 293 F.3d 1196,

1203 (10th Cir. 2002) (citing Gallagher v. "Neil Young Freedom Concert," 49 F.3d 1442 (10th Cir. 1995).  "Under each of these four tests, the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State." Johnson v. Rodriguez, 293 F.3d at 1203 (*internal quotations omitted*).  Furthermore, "plaintiff must demonstrate that the alleged deprivation of constitutional rights was caused by the exercise of some right or privilege created by the state, or by a rule of conduct imposed by the state, or by a person for whom the state is responsible." Id. at 1203.

In this case, the Court applies each test to the facts and concludes that Ms. Palmer is not a state actor.  First, the Court determines whether Ms. Palmer is a state actor under the public function test.  The Court must decide whether the state has "delegated…a function traditionally exclusively reserved to the States" to Ms. Palmer. Johnson v. Rodriguez, 293 F.3d at 1203.  While Court dockets are public information and provide information about criminal prosecutions, convictions and sentencing of criminal defendants, reporting this information to the public at large is not a function traditionally reserved to states.  Id. at 1203.  Moreover, the state does not control or dictate what information a reporter includes in his or her article nor what information is published in a local newspaper.  Therefore, the Court concludes that Ms. Palmer is not a state actor under the public function test.

Second, the Court considers whether Ms. Palmer's conduct would make her a state actor under the nexus test.  Plaintiff "must demonstrate that there is a sufficiently close nexus between the government and the challenged conduct such that the conduct may be fairly treated as that of the state itself." Gallagher, 49 F.3d at 1448.  The Tenth Circuit has stated that the State must "exercise[] coercive power or significant encouragement" in order to be held responsible for a private decision.  Plaintiff offers no evidence that Ms. Palmer's newspaper reporting of

7

Plaintiff's criminal proceeding has a sufficient nexus with Officer Holley or Assistant United States Attorney Camacho to be deemed state action.  There is no evidence that Ms. Palmer was forced to write the article or that she was directed by state actors as to the specific information that should be reported in her article.  While the Complaint asserts that there was a conspiracy between Ms. Palmer, Officer Holley and Assistant United States Attorney Camacho, there are no credible facts that demonstrate how or when they conspired to allegedly violate Plaintiff's civil rights.  Plaintiff offers legal conclusions based on his interpretation of the meaning of Ms. Palmer's article.  Admittedly, Ms. Palmer sought information about criminal activity in Roswell from the Public Information Officer for the Roswell Police Department to prepare her article.  But there is no evidence that Officer Holley coerced Ms. Palmer to write about any specific defendant.  Nor is there any evidence that Ms. Palmer had any contact with Assistant United States Attorney Camacho.  Plaintiff fails to demonstrate any nexus between state actors and Ms. Palmer sufficient to characterize her as a state actor.

Next, the Court considers whether Ms. Palmer is a state actor under the symbiotic relationship test, which requires a finding that "the state must have so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity." Gallagher, 49 F.3d at 1451.  The Tenth Circuit cites to Justice Souter's reference to this relationship as an "entwinement" in Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001), where the Supreme Court found state action involving a private corporation that organized interscholastic athletics and sponsored tournaments among private and public high schools.  293 F.3d at 1205-06.  The Tenth Circuit defines symbiosis as "the living together in more or less intimate association or even close union of two dissimilar organisms…" and entwinement as ". . . to interweave, attach or involve

8

inextricably in sentiment or thought." Id. at 1206.  Neither definition remotely describes Ms. Palmer's relationship with Officer Holley or Assistant United States Attorney Camacho because there is no evidence or facts offered to demonstrate any "intimate association," "inextricable involvement" or other close connection between these actors.  The Court does not find that Ms. Palmer's conduct constitutes activity under color of state law.

The final test is the joint action test where there is state action "present if a private party is a willful participant in joint action with the state or its agents."  Gallagher, 49 F.3d at 1453. "[C]ourts generally examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  Johnson v. Rodriguez, 293 F.3d at 1205.  There must be a "substantial degree of cooperative action between state and private officials," or an "overt and significant state participation in carrying out the deprivation of the plaintiff's constitutional rights" for the court to determine state action is present.  Id.  Here Plaintiff alleges that Defendants "conspired, combined and confederated" (Doc. 12 at 9)  to violate his "right to life" but Plaintiff does not demonstrate any actual concerted actions that deprived Plaintiff of his constitutional rights.  Plaintiff offers conclusory allegations that cannot support a finding of state action in Ms. Palmer's conduct.

Plaintiff's allegations fail to support a finding that Ms. Palmer was acting under "color of state law."  Also, there are no allegations demonstrating that Ms. Palmer deprived Plaintiff of any constitutional rights.  Nor does Plaintiff demonstrate that the "alleged deprivation of rights was caused by the exercise of some right or privilege created by the state."

To state a valid §1983 claim under a conspiracy theory between public and private actors, Plaintiff must allege facts demonstrating that the private party acted in concert with the state actor to commit an unconstitutional act.  Dixon v. Lawton, 898 F.2d 1443, 1449 (10th.Cir. 1990);

Marino v. Mayger, 118 Fed. Appx. 393, 404 (10th Cir. 2004) (citing Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 595 (10 Cir. 1999)). "Mere conclusory allegations with no supporting factual averments are insufficient, the pleadings must show specifically presented facts tending to show agreement and concerted action." Fisher v. Lynch, 531 F.Supp. 2, 1253, 1263 (D. Kan. 2008). Here, Plaintiff asserts that Ms. Palmer "combined, confederated and conspired to violate Archuleta's right to life" (Doc. 12 at 9). He alleges that the "Daily Record article" is proof of this agreement and concerted effort to violate his civil rights. Id. There are no factual details of the alleged conspiracy, just vague inferences that the Defendants conspired to violate Plaintiff's right to life by way of the printing of an article in the newspaper containing undisputed facts regarding Plaintiff's criminal conviction. To find a conspiracy, the Court would need to make wild assumptions and exaggerate Plaintiff's facts to find agreement and concerted action, which the Court refuses to do.

The Court concludes that the facts do not demonstrate that Ms. Palmer was acting under color of state law, nor was she a party to a conspiracy with state actors, and therefore recommends dismissal of Plaintiff's claim against Ms. Palmer for civil rights violations pursuant to § 1983.

## II.
### Plaintiff Fails To State A Claim Against Ms. Palmer For Violation of § 1985 Because Plaintiff Cannot Demonstrate The Existence Of A Conspiracy

While the Court concludes above that Plaintiff has failed to prove that Ms. Palmer conspired with state actors to violate his civil rights pursuant to § 1983, Plaintiff also appears to assert a conspiracy claim against Ms. Palmer pursuant to § 1985. 42 U.S.C. § 1985 provides a private right of action for damages based on private conspiracy and results from Congressional codification of the previous Civil Rights Act of 1871. Griffin v. Breckenridge, 403 U.S. 88

(1971). Specifically, § 1985 provides a cause of action where a private conspiracy (1) prevents an officer from performing duties, (2) obstructs justice, intimidates a party, witness or juror, or (3) deprives persons of rights or privileges. While Plaintiff does not identify under which provision he is alleging a cause of action against Ms. Palmer, the Court assumes, based on the Complaint, that Plaintiff brings his claims under § 1985(3) for deprivation of rights or privileges. 28 U.S.C. § 1985(3).

Pursuant to § 1985(3), a plaintiff seeking recovery for private conspiracy must show that: (i) racial, or class-based, invidiously discriminatory animus exists behind the conspirator's actions; and (ii) the conspiracy was aimed at interfering with rights such as the Thirteenth Amendment right to be free from involuntary servitude and the right to travel interstate. See United Brotherhood of Carpenters & Joiners of Am., Local 610, AFL-CIO, et al. v. Scott, 436 U.S. 825, 837 (1983); Bray v. Alexandria Women's Health Clinic, 809 U.S. 263, (1993); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (citing United States v. Kozminski, 487 U.S. 931 (1988) ("recognizing the Thirteenth Amendment right to be free from involuntary servitude"); United States v. Guest, 383 U.S. 745 (1966) ("in the Thirteenth Amendment context, the right of interstate travel")).

Plaintiff's Complaint does not set forth any facts asserting "racial or class-based, invidiously discriminatory animus," as required by § 1985. United Brotherhood, 436 U.S. at 837. The Complaint cites to § 1985 in the section asserting jurisdiction, but does not identify any facts supporting Plaintiff's claims (Doc. 12 at 1). Plaintiff's federal causes of action are identified as "Civil Rights Violations" (Doc. 12 at 5) and "Further Civil Rights Violations" (Doc. 12 at 8) but the allegations do not contain any facts that support § 1985 claims. The Court concludes that Plaintiff fails to state a claim upon which relief can be granted for conspiracy

under §1985 against Ms. Palmer, and therefore recommends that this claim be dismissed with prejudice.

## III.
## Pendant Claims

### A.
### Plaintiff Fails To State A Claim Against Ms. Palmer For Assault

Plaintiff asserts a claim for assault against Ms. Palmer (Doc. 12 at 10). Plaintiff alleges that "[a]ll defendants . . . combined, by act and omission," and placed Plaintiff "in imminent fear of imminent bodily injury." Id. Plaintiff alleges that all of the Defendants including Ms. Palmer had a duty not to place him in "imminent fear of imminent bodily injury," and breached their duty which "proximately caused damages" to Plaintiff. Id.

The Tenth Circuit recognizes that, in New Mexico, the torts of assault and battery rely upon the elements of civil assault and battery discussed in the Restatement (Second) of Torts. See Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197, 1209 n. 10 (10th Cir. 2006) (holding that in a civil case for battery, the proper elements were those in the Restatement (Second) of Torts rather than the statutory elements for criminal battery). An actor is subject to civil liability for battery if "he [or she] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . an offensive contact with the person of the other directly or indirectly results." State v. Ortega, 113 N.M. 347, 440, 827 P.2d 152, 155 (Ct. App. 1992) (quoting Restatement (Second) of Torts § 18 (1965)). To establish liability for assault under New Mexico law, therefore, a plaintiff must show that the defendant "act[ed] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . [was] thereby put in such imminent apprehension." Restatement (Second) of Torts § 21 (1965).

Plaintiff's Complaint fails to demonstrate how Ms. Palmer's conduct corresponds to the elements of assault (Doc. 12). Ms. Palmer's newspaper article contains statements regarding drug arrests in the Roswell area. Plaintiff's Complaint alleges that Ms. Palmer's article "was calculated to give the public impression that Archuleta had cooperated with authorities to assist the police in arresting and prosecuting and sentencing Mario Sauceda" (Doc. 12 at 4). Plaintiff further alleges that "Defendant Palmer . . . published information calculated to have Archuleta put at risk." Id. at 5. In his Complaint, Plaintiff appears to assert (1) that the publication in the Roswell Daily Record stating that Plaintiff was arrested, charged and convicted of distributing drugs in the same amount as Mario Saucedo meant that both criminal defendants were involved in the same drug case, (2) that because both criminal defendants are identified in the same article, Plaintiff snitched on the other defendant, and (3) that because of the newspaper article a "hit" was placed on Plaintiff (Doc. 12 at 9).

The Roswell Daily Record article specifically reports that Plaintiff was arrested in December 2009, a couple of months after Mario Sauceda, who was arrested in October 2009 (Doc. 20, Exhibit 1). There is no reference in the article that the criminal defendants or their cases were related. The Court does not see how the article connects Plaintiff and Mario Sauceda simply because of the type of drugs confiscated at arrest and the fact that both defendants were Roswell residents (Doc. 20, Exhibit 1). Plaintiff assumes and wrongly concludes that the article implies he is a "snitch." Id. The article does not expressly state that Plaintiff is a "snitch." Plaintiff makes conclusory allegations that the article implies that Plaintiff is a snitch because the criminal cases are reported jointly and that he received a lesser sentence than Mario Sauceda. (Doc. 12 at 9). The Court finds it unlikely that any information contained in this article would result in a "hit" being placed on Plaintiff. Plaintiff's interpretation would require the Court to

13

find some subliminal meaning that only other drug traffickers could interpret.  Plaintiff is never identified as an informant nor is there any implication of cooperation on his part.  Plaintiff also implies that the timing of the article, being published a month after Plaintiff's sentencing, suggests that Ms. Palmer intended harm to Plaintiff.  He alleges that Ms. Palmer should have known the "impact of the information on Archuleta's safety in prison" (Doc. 12 at 9).  The Court refuses to entertain either of Plaintiff's speculations.

The Complaint is devoid of any facts that Ms. Palmer reported "public information" in her article with the intent to cause harmful or offensive contact between Plaintiff and anyone else, or that she intended that Plaintiff be placed in imminent apprehension of such a contact.  Restatement (Second) of Torts § 21 (1965).  Plaintiff fails to state sufficient facts, when taken as true, demonstrating that Ms. Palmer's acts or omissions caused Plaintiff to "reasonably believe" that Ms. Palmer placed him in immediate danger of harm.  New Mexico v. Ortega, 113 N.M. at 440, 827 F.2d at 155.  Plaintiff's explanation of the drug world interpretation of the disseminated information is unpersuasive in light of a "plain reading" of the article.  The Court concludes that Plaintiff fails to state a claim upon which relief can be granted for assault, and therefore recommends Plaintiff's assault claim against Ms. Palmer be dismissed with prejudice.

### B. Plaintiff Fails To State A Claim Against Ms. Palmer For Invasion of Privacy

Plaintiff also asserts a claim for invasion of privacy against Defendant Palmer (Doc. 12 at 10).  Plaintiff alleges that all Defendants conspired to invade his privacy because they breached the duty of care not to make him a public person.  Id.  He contends that the Defendants, including Ms. Palmer, "report[ed] information that was not true, that was calculated to do him harm" (Doc. 12 at 10).

New Mexico recognizes that the tort of invasion of privacy is broken down into four categories: "(i) false light; (ii) intrusion [upon seclusion]; (iii) publication of private facts; and (iv) appropriation." Bhandari v. VHA Southwest Cmty. Health Corp., No. CIV 09-0932 JB/GBW, 2011 WL 1336512, at *18 (D.N.M. Mar. 30, 2011)(Browning, J.) (citing Moore v. Sun Pub. Corp., 118 N.M. 375, 382, 881 P.2d 735, 742 (Ct. App. 1994)). Based on Plaintiff's allegations that Ms. Palmer published false information with the intent to harm Plaintiff, publication of private facts and false light appear to be the only invasion of privacy categories implicated.

Plaintiff alleges that Ms. Palmer published private facts. Moore v. Sun Publishing Corp., 118 N.M. 375, 383 (Ct.App.1994). To adequately allege publication of private facts, Plaintiff must aver that there has been public disclosure of private facts, disclosure which would be objectionable to a reasonable person, and a lack of legitimate pubic interest in the information. Fernandez-Wells v. Beauvais, 127 N.M. 487, 489 (Ct. App. 1999); Restatement (Second) of Torts § 652D (1977). It is well settled that there is "no constitutional right to privacy in information that is readily available to the public, including arrest records, judicial proceedings, and information contained in police reports." Nilson v. Layton City, 45 F.3d 369, 371 (10th Cir. 1995).

Plaintiff asserts that Defendant Palmer conspired with Defendants Camacho and Holley "to invade Archuleta's privacy" and that they had a "duty of care not to make him a public person" (Doc. 12 at 10). He alleges that the fact that he received a 46-month sentence and Mario Sauceda received a 15-year sentence "indicate[es] to those in the drug world that Archuleta cooperated against Saucedo." Id. at 9. As discussed previously, Plaintiff takes issue with the timing of the article and the fact "it appeared over a month after" his sentencing. Id. at 9.

Plaintiff attempts to argue that there is a difference between reporting about his criminal case individually as opposed to jointly with another criminal case. Id.

Ultimately, Plaintiff fails to allege sufficient facts that support a claim for invasion of privacy. First, he does not dispute that his criminal case is a matter of public record. Id. He also fails to allege that there is a lack of public interest because arrest records are "information that is readily available to the public," and therefore are not grounds on which the constitution allows liability for invasion of privacy. Nilson v. Layton City, 45 F.3d at 371. The Court will not make wild inferences from the language of the newspaper article to find alleged hidden meaning that apparently only those in the "drug world" understand.

The other category of invasion of privacy that Plaintiff appears to allege against Ms. Palmer is false light. The tort of "[f]alse light invasion of privacy is a close cousin of defamation." Andrews v. Stallings, 119 N.M., 478, 492, 892 P.2d, 611, 626 (Ct. App. 1992)(internal quotations omitted). "The essence of this tort, a close cousin of defamation, is the placing of another 'in a false light in the public eye.'" Moore v. Sun Pub. Corp., 118 N.M. at 382, 881 P.2d at 742 (citation omitted). Criminal matters, such as a conviction, are matters of public concern, and "matters of public concern must hurdle the same constitutionally-based limitations on false light recovery as apply to defamation claims." Andrews v. Stallings, 119 N.M. at 493, 892 P.2d at 62. See McNally v. Pulitzer Pub. Co., 532 F.2d 69 (8th Cir. 1976) (holding that publication of facts relating to the conviction were matters of public concern and comprised information in which the public had legitimate interest, and therefore were not actionable for the false light category of the tort of invasion of privacy). New Mexico law recognizes that "the right of privacy is generally inferior and subordinate to the dissemination of news." Blount v. T D Publ. Corp., 77 N.M. 384, 389, 423 P.2d 421, 424 (1966).

Plaintiff alleges that Defendants breached their duty not to make him "a public person . . . by reporting information that was not true, that was calculated to do him harm" (Doc. 12 at 10). Plaintiff's assertion that the reporting of information caused him harm is based on his allegation that, the fact placing Plaintiff's conviction alongside another known drug trafficker would cause those in the drug world to believe that Plaintiff helped the police, "was known to Camacho at the time she made the information available to Holley," and when the information was "reported . . . [by] Palmer, for publication in the [Roswell Daily Record]," that the publication of that information would "impact Archuleta's safety in prison, and the safety of Archuleta's family" (Doc. 12 at 9). The tort of false light invasion of privacy, however, subjects the defendant to liability only where the defendant's publication of the information causes the plaintiff to be "placed before the public in a false position." Moore v. Sun Pub. Corp., 118 N.M. at 384, 881 P.2d at 743 (quoting Restatement (Second) of Torts § 652E cmt. b.). See Restatement (Second) Torts § 652E ("One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy...").

Plaintiff does not allege that the information contained in Ms. Palmer's article was false, nowhere does Plaintiff dispute the accuracy of the article. He states "the information, independently is not violative of anything" (Doc. 12 at 9). Plaintiff takes issue with how the article was written and that it reports on two drug cases. Id. In fact, the information reported in the article was factually correct and can be confirmed by review of the Court's docket (Cr. 10-0107, Doc. 1, et. seq.)

Plaintiff fails to state a claim upon which relief can be granted, because he does not allege that the publication of the circumstances of his conviction in the same article as publication of the conviction of another drug trafficker placed Plaintiff in a false light to the

public. He alleges only that it placed him and his family in harm's way because the juxtaposition "indicat[es] to those in the drug world, that Archuleta had cooperated," against the other drug trafficker for a reduced sentence. Plaintiff's nonsensical allegations cannot sufficiently show that he was placed in a false light in front of the public. The Court recommends Plaintiff's claims against Ms. Palmer for invasion of privacy be dismissed with prejudice.

## RECOMMENDATION

The Court concludes that the claims against Defendant Palmer should be dismissed because Plaintiff fails to state a claim upon which relief can be granted and that Ms. Palmer's Motion to Dismiss (Doc. 74) should be denied as moot. Therefore, the Court recommends that the claims against Defendant Jessica Palmer be dismissed with prejudice and her Motion to Dismiss (Doc. 74) be DENIED as moot.

Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant 28 U.S.C. §636(b)(1), file written objections to these proposed findings and recommended disposition. A party must file any objections with the clerk of the district court within the fourteen (14) day period allowed if that party would like to have appellate review of the proposed findings and recommendations. If objections are not filed, appellate review will not be allowed.

                                               *Robert Hayes Scott*
                                               ROBERT HAYES SCOTT
                                               UNITED STATES MAGISTRATE JUDGE